LILLIAN E. MURRAY, Widow of HUGH H. MURRAY, JR., Deceased Em-
ployee, and WACHOVIA BANK & TRUST COMPANY, Executor of the
Estate of Hugh H. Murray, Jr., Plaintiffs v. ASSOCIATED INSURERS,
INCORPORATED, Employer; VIRGINIA MUTUAL INSURANCE COM-
PANY, Carrier, Defendants

No. 9310IC5

(Filed 3 May 1994)

1. **Workers' Compensation § 152 (NCI4th)— workers' com-
pensation—trip combining work and personal business—
automobile accident—decedent not off duty—trip within course
of employment**

In an action to recover death benefits under N.C.G.S.
§ 97-38 where decedent was in a collision on his way from
his primary residence in Raleigh to his home in Hound Ears
for a week-end during which he planned to go to a dinner
party and to call on customers, among other activities, the
Industrial Commission erred in finding that, even if decedent
had business to conduct on 28 June 1986, he was off duty
and not about that business on 27 June 1986 when the collision
in which he was injured occurred, since decedent's accident
occurred on the direct route he would have had to take from
Raleigh to reach his destination in Hound Ears; there was
no deviation or departure from his employment; and according-
ly decedent was not "off duty" and was within the course
of his employment at the time of his accident on 27 June
1986, if he in fact had business to conduct on 28 June 1986.

**Am Jur 2d, Workers' Compensation § 294.**

2. **Workers' Compensation § 152 (NCI4th)— workers' com-
pensation—decedent on business trip—dual purpose rule—
evidence not considered—error**

In an action to recover death benefits under N.C.G.S.
§ 97-38, the Industrial Commission erred in finding that plain-
tiffs' witnesses' testimony concerning the business related pur-
pose of decedent's trip was of "no consequence to the ultimate
outcome of this case," since, if the Commission found that
plaintiffs' witnesses' testimony established that decedent had
a business purpose for traveling from Raleigh to Hound Ears
on 27 June 1986, under the dual purpose rule, decedent was
in the course of his employment during the trip to Hound

MURRAY v. ASSOCIATED INSURERS, INC.

[114 N.C. App. 506 (1994)]

Ears even though he had additional personal motivations for making the trip as long as he was on the direct route he would have had to take to accomplish the business purpose.

**Am Jur 2d, Workers' Compensation § 294.**

3. **Workers' Compensation § 387 (NCI4th)— decedent killed on trip—trip for business or personal reasons—decedent's statements to others—admissibility**

In an action to recover death benefits under N.C.G.S. § 97-38 where there was a question as to whether decedent traveled from Raleigh to Hound Ears to conduct business or purely for personal reasons, decedent's statements to his wife, daughter, and another customer tending to show his intent or motive in travelling to Hound Ears was admissible under the state of mind exception to the hearsay rule set forth in N.C.G.S. § 8C-1, Rule 803(3).

**Am Jur 2d, Workers' Compensation §§ 582-585.**

4. **Workers' Compensation § 115 (NCI4th)— automobile accident— stroke—cause of accident unknown—death arising out of employment**

Although medical experts testified that it was impossible to tell whether a stroke suffered by decedent occurred before his automobile accident and was thus a cause of the accident or whether the stroke occurred as a result of the accident, decedent's accident arose out of his employment if the Industrial Commission finds that decedent was in the course of his employment at the time of the accident.

**Am Jur 2d, Workers' Compensation §§ 269, 271.**

5. **Workers' Compensation § 363 (NCI4th)— death benefits for employee—claim filed by executor but not widow—jurisdiction of Commission**

Even if decedent's widow did not technically file a claim for decedent's death benefits, the Industrial Commission had jurisdiction to determine her rights to receive death benefits if the Commission otherwise had jurisdiction to hear the claim, since the Commission acquired jurisdiction when the executor of decedent's estate filed a claim for decedent's injuries which ultimately resulted in death within two years of the accident.

**Am Jur 2d, Workers' Compensation §§ 554, 557.**

MURRAY v. ASSOCIATED INSURERS, INC.

[114 N.C. App. 506 (1994)]

**6. Workers' Compensation § 114 (NCI4th)— death of employee— cause of death—sufficiency of evidence**

Though the immediate cause of decedent's death was pneumonia, there was sufficient evidence to support the Industrial Commission's finding that decedent died as a result of injuries received in an automobile accident.

**Am Jur 2d, Workers' Compensation §§ 269, 271.**

Judge COZORT dissenting.

Appeal by plaintiffs from opinion and award of the North Carolina Industrial Commission filed 11 August 1992. Heard in the Court of Appeals 17 November 1993.

Decedent Hugh H. Murray Jr. was the founder of Associated Insurers, Inc. He sold the company in 1982 to five coworkers but continued to work as an employee of the company for a salary plus an automobile allowance and operating expenses. On Friday 27 June 1986, decedent was severely injured in a car accident on his way from Raleigh to Hound Ears, North Carolina. Decedent died on 5 September 1987 as a result of his injuries. Plaintiffs filed a claim with the Industrial Commission for death benefits under G.S. 97-38. After a hearing, the Deputy Commissioner entered an opinion and award denying plaintiffs' claims for death benefits. The relevant portions of the Deputy Commissioner's opinion and award are as follows:

EVIDENTIARY RULING

Plaintiff's objection to Defendants' Documentary Evidence, dated 22 February 1991, is SUSTAINED. The undersigned's ruling sustaining defendants' objection to testimony by Mrs. Lillian Murray about statements by her husband that he was going to conduct business at Hound Ears on the weekend of 27 June 1986, remains unchanged and defendants' objections to such statements made by other witnesses, to the extent that they do not conform to the North Carolina Rules of Evidence, are SUSTAINED as well.

. . . .

MURRAY v. ASSOCIATED INSURERS, INC.

[114 N.C. App. 506 (1994)]

FINDINGS OF FACT

. . . .

3. Hugh H. Murray, Jr. married Lillian E. Murray in 1960. They lived together as husband and wife from then through the date of his death on 5 September 1987.

4. Mr. Murray was the founder of Associated Insurers, Incorporated, an independent insurance agency. In 1982 he sold Associated Insurers, Incorporated to Robert Guthrie, Durant Vick, Robert King, William Aldridge and Conner Murray.

5. On 27 June 1986, Hugh H. Murray, Jr. was an employee of Associated Insurers, Incorporated. At that time, and at his death, he was being paid at the annual rate of $25,000.00, plus an expense account of $400.00 per month automobile allowance, and incidental expenses associated with his automobile, including tires, gas and oil.

6. After his sell [sic] of Associated Insurers, Incorporated to the five new owners, Mr. Murray's account responsibilities decreased substantially, but he still had various personal accounts assigned to him.

7. Mr. Murray's practice in dealing with the servicing of the personal accounts assigned to him was to meet personally with his clients to discuss his recommendations for changes and any additional insurance they might desire, as well as to personally deliver the insureds' policies and bills for such policies. Mr. Murray's practice of meeting personally with the insureds, however, was not necessary for the accomplishment of his business mission of selling insurance.

8. Mr. Murray's permanent residence was in Raleigh, North Carolina but Mr. Murray and his wife, Lillian Murray, also kept a home in Hound Ears, North Carolina. They maintained the home in Hound Ears for many years prior to 27 June 1986.

9. The home in Hound Ears was located in a scenic resort community with a country club to which Mr. Murray belonged. The Murray's [sic] participated in an extremely active social life in the Hound Ears area.

10. Mr. Murray would spend almost every other, if not every, weekend at the Hound Ears home.

11. As of 27 June 1986, Mrs. Murray had arrived at the home in Hound Ears and Mr. Murray, as usual, intended to join her in Hound Ears for a relaxing weekend.

12. Since Mr. Murray was going to be in Hound Ears the weekend beginning 27 June 1986, Mr. Murray contacted three of his customers in the Hound Ears area and made arrangements to meet with them on 28 June or later.

13. Pursuant to plans that had been arranged for Mr. Murray by his wife, Mr. Murray intended to meet her in Blowing Rock, North Carolina on the evening of 27 June 1986, at the home of Mr. William Mauney.

14. While driving from Raleigh to his destination in Blowing Rock to attend a dinner party at the Mauney home, Mr. Murray was involved in a motor vehicle accident, which eventually resulted in his death on 5 September 1987.

15. Mr. Murray was not going to be conducting any employment-related activities at the dinner party on 27 June 1986.

16. At the time of the collision, Mr. Murray was off-duty and was not engaged in any employment-related activities. The drive to Blowing Rock on the evening of 27 June 1986 was not for defendant-employer's benefit but for Mr. Murray's own benefit.

17. At the time of the collision, the insurance-related documentation for the customers with which Mr. Murray had made appointments later in the weekend, was not in the state of completion and was not in a state of readiness for delivery by Mr. Murray. Mr. Murray was not going to be delivering any insurance documentation on the weekend of 27 June 1986.

18. There was no employment-related purpose which created the necessity for Mr. Murray's trip on 27 June 1986. Mr. Murray was traveling to Hound Ears for a social and relaxing weekend with his wife. Mr. Murray's work did not create the necessity for travel.

\* \* \* \* \* \* \* \*

The foregoing findings of fact and conclusions of law engender the following additional

**MURRAY v. ASSOCIATED INSURERS, INC.**

[114 N.C. App. 506 (1994)]

### CONCLUSIONS OF LAW

1. On 27 June 1986, Hugh H. Murray, Jr. was an employee of defendant-employer, Associated Insurers, Incorporated. N.C.G.S. § 97-2(2).

2. On 27 June 1986, Mr. Murray's average weekly wage yielded the maximum compensation rate of $308.00 per week. N.C.G.S. § 97-2(5).

3. On 27 June 1986, while Mr. Murray was driving to Blowing Rock to attend a dinner party and spend time with his wife at their home in Hound Ears, he was not in an employment-related activity and the collision and injuries sustained did not arise out of and in the course of his employment with defendant-employer. N.C.G.S. § 97-2(6).

4. Plaintiffs argue that the "dual purpose rule" is applicable to the facts presented in this case. The "dual purpose rule," in part, states that when a trip serves both personal and business purposes, it is a personal trip if the trip would have been made despite the failure of the business purpose and would have been dropped in the event of the failure of the private purpose, though the business errand remained undone. Humphrey v. Quality Cleaners and Laundry, 251 N.C. 47, 110 S.E.2d 467 (1959).

5. Assuming arguendo that the "dual purpose rule" is applicable to the present case, inasmuch as Mr. Murray's trip would have been made despite the failure of any business purpose for the weekend in question and would have been dropped in the event of the failure of the private purpose, Mr. Murray's trip was a personal trip and, therefore, Mr. Murray's death as a result of the collision on 27 June 1986 is not compensable under the North Carolina Workers' Compensation Act. Id.; N.C.G.S. § 97-2(6).

\* \* \* \* \* \* \* \* \* \*

Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following

### ORDER

1. Under the law, plaintiff's claim must be, and the same is hereby, DENIED.

Plaintiffs appealed to the Full Commission and the Full Commission entered the following opinion and award:

The undersigned have reviewed the record with reference to the errors alleged and find no adequate ground to amend the award.

The Findings of Fact and Conclusions of Law, as found by [the Deputy Commissioner], are supported by the competent evidence presented.

The sustained hearsay objections with regard to Mrs. Lillian Murray's testimony and the testimony of other witnesses as to the business purpose of plaintiff's trip are of no consequence to the ultimate outcome of this case. Thus, the need to address this issue becomes moot.

The Full Commission finds that, even if the hearsay evidence was allowed to the extent that it showed a purpose of plaintiff's trip was to conduct business on the weekend in question, at the time of [decedent's] accident, he was in route to a purely non-business related party. Thus, even if [decedent] had business to conduct on June 28, 1986, he was off duty and not about that business on June 27, 1986, when the collision occurred. He was on his way to a dinner party in Blowing Rock (not Hound Ears, where his business was to be conducted), and his purpose was completely a personal one. At the time and place of the collision, [decedent] was not in the course of his employment, even if he would have been at some time the following day.

In view of the foregoing, the Full Commission ADOPTS as its own the Opinion and Award as filed.

Plaintiffs appeal from the opinion and award of the Industrial Commission. Defendants bring cross assignments of error to support the judgment of the Industrial Commission.

*Teague, Campbell, Dennis & Gorham, by C. Woodrow Teague and George W. Dennis III, for plaintiff-appellants.*

*Young, Moore, Henderson & Alvis P.A., by B. T. Henderson, II and J. A. Webster, III, for defendant-appellees.*

MURRAY v. ASSOCIATED INSURERS, INC.

[114 N.C. App. 506 (1994)]

EAGLES, Judge.

Plaintiffs appeal from the Industrial Commission's opinion and award filed 11 August 1992. Defendants also cross assign error to support the Industrial Commission's opinion and award. After careful review of the briefs, transcripts and record, we reverse and remand to the Full Commission for findings of fact on the question of whether decedent had a concurrent business purpose for travelling to Hound Ears on 27 June 1987.

I.

[1] Plaintiffs contend that the Commission erred in finding that "even if [decedent] had business to conduct on June 28, 1986, he was off duty and not about that business on June 27, 1986, when the collision occurred." We agree.

"Employees whose work entails travel away from the employer's premises are held in the majority of jurisdictions to be within the course of their employment continuously during the trip, except when a distinct departure on a personal errand is shown." *Martin v. Georgia-Pacific Corp.*, 5 N.C. App. 37, 41, 167 S.E. 2d 790, 793 (1969). Accordingly, decedent was not "off duty" and was continuously within the course of his employment during the trip on 27 June if decedent was travelling to Hound Ears to conduct business on 28 June. This is true unless it is shown that at the time of the accident decedent had made a distinct departure on a personal errand.

The evidence shows that when decedent's automobile accident occurred, he was traveling on the most direct route from Raleigh to the Hound Ears community in Blowing Rock, North Carolina. In cases where there are both personal and business reasons for making the trip, there is no departure or deviation from employment if the accident occurs while the claimant is on the most direct route to accomplish both the personal and the business objective. 1 A. Larson, *The Law of Workmen's Compensation* § 19.21 (1993). Even if the personal objective would have required a detour if it had been reached, there is no deviation if at the time of the accident, the claimant was on the direct route which he would have had to take to reach his business destination. *Id.* at § 19.22. Since decedent's accident occurred on the direct route he would have had to take to reach his business destination in Hound Ears, there was no deviation or departure from his employment. Accord-

ingly, decedent was not "off duty" and was within the course of his employment at the time of his accident on 27 June 1986, if he in fact had business to conduct on 28 June 1986.

## II.

[2] Plaintiffs further contend that the Commission erred in finding that plaintiffs' witnesses' testimony concerning the business-related purpose of decedent's trip was of "no consequence to the ultimate outcome of this case." We agree. If the Commission found that plaintiffs' witnesses' testimony established that decedent had a business purpose for travelling to Hound Ears on 27 June 1986, under the dual purpose rule, decedent was in the course of his employment during the trip to Hound Ears even though he had additional personal motivations for making the trip as long as he was on the direct route he would have had to take to accomplish the business purpose.

Professor Larson summarizes the "dual purpose rule" in his treatise on Workers' Compensation Law. Under the "dual purpose rule":

> Injury during a trip which serves both a business and a personal purpose is within the course of employment if the trip involves the performance of a service for the employer which would have caused the trip to be taken by someone even if it had not coincided with the personal journey. This principle applies to out-of-town trips, to trips to and from work, and to miscellaneous errands such as visits to bars or restaurants motivated in part by an intention to transact business there.

1 A. Larson, *The Law of Workmen's Compensation* § 18.00 (1993). In *Humphrey v. Quality Cleaners & Laundry*, 251 N.C. 47, 110 S.E.2d 467 (1959), the North Carolina Supreme Court laid out the test to be applied in determining whether a trip that has both personal and business purposes is compensable under the Act. There the *Humphrey* Court adopted Judge Cardozo's test set out in *Marks Dependents v. Gray*, 251 N.Y. 90, 167 N.E. 181 (1920).

> We do not say that the service to the employer must be the sole cause of the journey, but at least it must be a concurrent cause. To establish liability, the inference must be permissible that the trip would have been made though the private errand had been canceled. . . . The test in brief is this: If the work of the employee creates the necessity for travel, such is in

MURRAY v. ASSOCIATED INSURERS, INC.

[114 N.C. App. 506 (1994)]

the course of his employment, though he is serving at the same time some purpose of his own. . . . If however, the work has had **no part** in creating the necessity for travel, if the journey would have gone forward though the business errand had been dropped, **and** would have been canceled upon failure of the private purpose, though the business errand was undone, the travel was then personal, and personal the risk.

*Humphrey v. Quality Cleaners & Laundry*, 251 N.C. 47, 51, 110 S.E.2d 467, 470 (1959) (emphasis added). Under this test, a trip is personal if the trip would have gone forward even if the business errand had been dropped **and** the trip would have been cancelled upon the failure of the private purpose. In this way, the work would have had no part in creating the necessity for travel. The dual purpose rule does not require that the business purpose be the primary purpose for making the trip. The dual purpose rule only requires that the business purpose be a concurrent cause of the trip. 1 A. Larson, *The Law of Workmen's Compensation* § 18.13 (1993). A concurrent cause is a cause which would have occasioned the making of the trip even if the private mission had been canceled. *Id.*

It is clear that the Full Commission did not properly apply the dual purpose rule to the facts of this case. The Full Commission found in its opinion and award that:

[E]ven if the hearsay evidence was allowed to the extent that it showed a purpose of plaintiff's trip was to conduct business on the weekend in question, at the time of [decedent's] accident, he was in route to a purely non-business related party. Thus, even if [decedent] had business to conduct on June 28, 1986, he was off duty and not about that business on June 27, 1986 when the collision occurred. . . . At the time and place of the collision, [decedent] was not in the course of his employment, even if he would have been at some time the following day.

Under the dual purpose rule, if a concurrent purpose of decedent's trip to Hound Ears on 27 June was to conduct business there on 28 June, decedent was within the course of his employment at the time of the accident on 27 June. Accordingly, the Commission erred in finding that testimony concerning the business nature of decedent's trip was irrelevant to the ultimate outcome of this case. Whether decedent had business appointments on 28 June 1986 is crucial here because that fact determines whether decedent

had a concurrent business purpose for travelling to Hound Ears on 27 June 1986.

### III.

[3] Plaintiffs contend that the Commission erred in excluding plaintiffs' evidence regarding the business-related purpose of decedent's trip. Plaintiffs offered the testimony of five witnesses to show that decedent had made appointments on 28 June 1986 with several of defendant-employer's policyholders at their homes in Hound Ears to discuss their insurance policies. These five witnesses were: 1) Mrs. Lillian E. Murray, decedent's widow, 2) Mr. Thomas M. Gow, 3) Ms. Helen Agnes Cushing, 4) Ms. Jean M. Kelso and 5) Ms. E. Tracy Murray, decedent's daughter.

Defendants objected to all evidence in these witnesses' testimony regarding the purpose of decedent's trip to Hound Ears. The Deputy Commissioner in his opinion and award sustained defendants' objections to decedent's widow's testimony and also sustained defendants' objection to similar statements made by the other witnesses "to the extent that they do not conform to the North Carolina Rules of Evidence." As we have already discussed, the Full Commission, acting under an erroneous application of the law, did not consider plaintiffs' witnesses' testimony to be relevant to the ultimate outcome of the case and did not address the issue of whether the Deputy Commissioner properly excluded the witnesses' testimony.

We conclude that the testimony of Mrs. Lillian Murray, Ms. Helen Agnes Cushing and Ms. E. Tracy Murray should have been admitted into evidence. Mrs. Lillian Murray, decedent's widow, testified at the hearing that her husband was coming to Hound Ears on business and that he had clients to call on to deliver policies. When defense counsel asked Mrs. Murray on cross examination how she knew decedent had clients to see that weekend, Mrs. Murray responded that "He [decedent] told me before I left home that he had an appointment and that was the reason for going that weekend." Ms. Cushing testified in her deposition that decedent told her on the telephone regarding the delivery of her insurance policy that "I'm coming to Hound Ears on Saturday, and I will take care of it. I have it with me. I will have it with me." Finally, Ms. E. Tracy Murray, decedent's daughter, testified in her deposition that on the day of the accident decedent told her that he had "calls" to make in Hound Ears over the weekend

in addition to attending the dinner party that Friday evening. Ms. Murray went on to explain that she knew that making "calls" meant calling on customers.

Plaintiffs offered these witnesses' statements to show that decedent also intended to conduct business in Hound Ears on the weekend of 27-28 June 1986. Under Rule 803(3) of the North Carolina Rules of Evidence, a statement of the declarant's then existing state of mind, such as intent, plan, motive, or design is admissible as an exception to the hearsay rule. G.S. 8C-1, Rule 803(3). Decedent's statements to his widow, his daughter, and Ms. Cushing tend to show decedent's intent or motive in travelling to Hound Ears on 27 June 1986. Accordingly, their testimony is admissible for that purpose.

## IV.

In sum, the Full Commission made an error of law in concluding that whether decedent had business appointments on 28 June 1986 was irrelevant since decedent was on his way to the dinner party at the time of the accident. As we have previously discussed, decedent's injuries and resulting death are compensable under the dual purpose rule if decedent had a concurrent business purpose for travelling to Hound Ears on 27 June 1986. Since plaintiffs' right to compensation depends upon whether decedent had a concurrent business purpose for travelling to Hound Ears on 27 June 1986, we remand so that the Full Commission may make specific findings of fact on this question. *See Bee v. Yates Aluminum Window Co., Inc.*, 46 N.C. App. 96, 264 S.E.2d 368 (1980) (case remanded for additional findings of fact on this same question).

Defendants contend that the findings of fact and conclusions of law made by the Deputy Commissioner and adopted by the Full Commission are sufficient to support the Commission's opinion and award. We disagree. When the Commission finds facts or fails to find facts under a misapprehension of the law, the case should be remanded so that the evidence can be considered in its true legal light. *Mills v. Mills*, 68 N.C. App. 151, 158, 314 S.E.2d 833, 838 (1984). Here, the Deputy Commissioner made an error of law in excluding and refusing to consider plaintiffs' witnesses' testimony concerning decedent's business appointments on the weekend of 27 June. The Full Commission, however, under a misapprehension of the dual purpose rule, regarded plaintiffs' evidence relating to decedent's business purpose as irrelevant to its final decision. The

Full Commission erroneously assumed that even if plaintiffs' evidence excluded by the Deputy Commissioner was allowed to the extent that it showed a business purpose, decedent was not in the course of his employment because he was off duty and on his way to a dinner party. We have already discussed, *supra*, how that rationale is erroneous. Nevertheless, the Commission adopted the Deputy Commissioner's opinion and award. Since the Full Commission adopted the Deputy Commissioner's opinion and award under a misapprehension of the dual purpose rule, we vacate the opinion and award and remand this case to the Full Commission to apply the proper legal standard to the admissible ·evidence.

V.

[4]   Defendants cross assign error and· contend that even if decedent's injuries arose in the course of his employment, his injuries did not "arise out of" his employment. An injury is compensable under the Act if it results from an "accident arising out of and in the course of the employment." G.S. 97-2(6). "While often interrelated, the concepts of 'arising out of' and 'in the course of' the employment are distinct requirements, and a claimant must establish both to receive compensation." *Roberts v. Burlington Industries*, 321 N.C. 350, 354, 364 S.E.2d 417, 420 (1988). "An accident occurring during the course of an employment . . . does not *ipso facto* arise out of it." *Robbins v. Nicholson*, 281 N.C. 234, 238, 188 S.E.2d 350, 354 (1972). An injury arises out of the employment when there is a causal connection between the employment and the injury. *Patterson v. Gaston County*, 62 N.C. App. 544, 546, 303 S.E.2d 182, 183 (1983).

Here, medical records and expert testimony indicated that decedent also suffered a stroke on the day of the accident. Both medical experts who testified at the hearing testified that it was impossible to tell whether decedent's stroke occurred before the accident or whether the stroke occurred as a result of the accident. Defendants argue that if the stroke caused the accident, decedent's injuries resulting from the accident were unrelated to his employment. We disagree.

When an employee's idiopathic condition is the sole cause of the injury, the injury does not arise out of the employment. *Vause v. Vause Equipment Co.*, 233 N.C. 88, 63 S.E.2d 173 (1951). However, "[w]here any reasonable relationship to the employment exists, or employment is a contributory cause, the court is justified in upholding

the award as 'arising out of employment.' " *Allred v. Allred-Gardner, Inc.*, 253 N.C. 554, 557, 117 S.E.2d 476, 479 (1960).

In *Allred v. Allred-Gardner, Inc.*, 253 N.C. 554, 117 S.E.2d 476 (1960), the plaintiff sustained severe injuries when his vehicle collided with a pole. There the plaintiff was returning to his employer's place of business from a service call when he "blacked out," lost control of his vehicle, and ran into a pole. Our Supreme Court held that the plaintiff's accident arose out of his employment even though his blackout caused the accident.

> Two circumstances, we think, serve to fix liability on the defendants in this case: First, a blackout to which the claimant had a predisposition; second, the blackout occurred at the time and place the claimant's duties required him to be driving an automobile. The combination of these two produced the accident. In the light of our decisions, the plaintiff's injury may be said to arise out of and in the course of his employment.

*Id.* at 557-58, 117 S.E.2d at 479.

Here, there is no direct evidence of record that decedent's stroke caused the accident. If the cause of an employee's injury in the course of his employment is unknown and the Commission finds that the injury arose out of the employment, an award will be sustained. *Cole v. Guilford County*, 259 N.C. 724, 727, 131 S.E.2d 308, 311 (1963). However, even assuming *arguendo* that decedent's stroke did cause the accident, under *Allred, supra*, decedent's accident arose out of his employment if decedent was in the course of his employment at the time of the accident. Accordingly, if the Commission on remand determines that decedent was in the course of his employment at the time of the accident, we hold that decedent's accident arose out of his employment.

[5] Defendants next contend that Mrs. Lillian Murray, decedent's widow, never properly filed a claim for decedent's death benefits under the Act and that her claim for death benefits should be dismissed under G.S. 97-24. G.S. 97-24 requires that claims be filed within two years after the date of the accident in order to obtain benefits under the Act. Failure to timely file a claim is a jurisdictional bar and cannot ordinarily be overcome by either waiver or estoppel. *Reinhardt v. Women's Pavilion, Inc.*, 102 N.C. App. 83, 86-87, 401 S.E.2d 138, 140-41 (1991).

MURRAY v. ASSOCIATED INSURERS, INC.

[114 N.C. App. 506 (1994)]

The Industrial Commission's Form No. 18 is required to institute a claim under G.S. 97-24. Defendants contend that Mrs. Murray never filed a claim for death benefits with the Commission because her attorney, Mr. Teague, signed Form No. 18 on behalf of Wachovia Bank & Trust Company as executor rather than on behalf of Mrs. Murray as dependent. Defendants argue that the executor of decedent's estate is not a proper claimant for death benefits when there are dependents available to bring the claim. *McGill v. Bison Fast Freight, Inc.*, 245 N.C. 469, 476, 96 S.E.2d 438, 444 (1957). Accordingly, defendants contend that since plaintiff's attorney did not sign Form No. 18 on Mrs. Murray's behalf, Mrs. Murray did not file a claim for death benefits within the two year jurisdictional requirement of G.S. 97-24. We disagree.

In *Smith v. Allied Exterminators, Inc.*, 279 N.C. 583, 184 S.E.2d 296 (1971), the Supreme Court held that a father's right to participate in his son's death benefits was not barred by his failure to file a claim. In *Smith*, the insurer filed a request for hearing with the Commission pursuant to G.S. 97-83 to determine whether the mother or father was entitled to their son's death benefits. The Court said that the Commission had jurisdiction at the hearing to determine the rights of the father even though he did not file a claim. *Id.* at 587, 184 S.E.2d at 298. Accordingly, we conclude under the holding of *Smith v. Allied Exterminators, supra*, that even if Mrs. Murray did not technically file a claim for decedent's death benefits, the Commission had jurisdiction to determine her rights to receive death benefits if the Commission otherwise had jurisdiction to hear the claim.

Here, the Commission acquired jurisdiction when the executor of decedent's estate filed a claim for decedent's "[h]ead and body injuries resulting in unconsciousness and eventual death." Decedent's accident occurred on 27 June 1986. The claim was filed on 22 June 1988, within two years of decedent's accident. G.S. 97-24 only requires that "a claim be filed with the Industrial Commission within two years after the accident." The Commission obtains jurisdiction in the case once a claim is timely filed. *Reinhardt v. Women's Pavilion, Inc.*, 102 N.C. App. 83, 86-87, 401 S.E.2d 138, 140 (1991); *Tabron v. Gold Leaf Farms, Inc.*, 269 N.C. 393, 396, 152 S.E.2d 533, 535 (1967). Accordingly, we hold that the Commission had jurisdiction to hear the claim for decedent's death benefits and to determine Mrs. Murray's rights under the Act to receive death benefits. "The Worker's Compensation Act should

MURRAY v. ASSOCIATED INSURERS, INC.

[114 N.C. App. 506 (1994)]

be liberally construed whenever appropriate so that benefits will not be denied upon mere technicalities or strained and narrow interpretations of its provisions." *Deese v. Lawn and Tree Expert Co.*, 306 N.C. 275, 277, 293 S.E.2d 140, 143 (1982). This cross-assignment of error is overruled.

[6] Finally, defendants contend that plaintiffs did not meet their burden of proof in showing that decedent's death was caused by the accident on 27 June 1986. Defendants contend that the immediate cause of decedent's death was pneumonia and that plaintiffs have not shown that decedent contracted pneumonia because of the accident. We disagree.

"The Commission's findings of fact on the issue of causation are conclusive if supported by competent evidence, even where the evidence is conflicting." *Lettley v. Trash Removal Service*, 91 N.C. App. 625, 628, 372 S.E.2d 747, 749 (1988). There is ample evidence here to support the Commission's finding. The evidence in the record shows that decedent sustained numerous injuries as a result of the accident. Decedent sustained a hip fracture that could not be surgically repaired, multiple fragment fractures of the right proximal head of the fibula and tibula which later became infected, rib fractures which led to pulmonary contusions and collapse of the lung, and a closed head injury which affected his mental and motor status. Decedent was bedridden and could not walk or take care of himself following the accident. Decedent was institutionalized in the hospital and thereafter in a nursing home from the day of his accident until his death on 5 September 1987.

Although decedent died from pneumonia, both medical experts who testified at the hearing testified that decedent's injuries from the accident led to his contracting pneumonia. Dr. Wells Edmundson, the medical director of the nursing home where decedent was institutionalized after the accident, testified that decedent's condition as a result of the accident, particularly his collapsed lung, his use of a feeding tube, and his bedridden status, significantly increased his risk of contracting pneumonia. Dr. William J. Senter, an expert in internal medicine, testified that "the pneumonia that he [decedent] later developed was inevitable from his condition." Both doctors testified that in their expert opinions, decedent's pneumonia and resulting death were caused by complications arising from the injuries decedent sustained in the accident on 27 June 1986. Accordingly, we conclude that there is sufficient competent evidence

here to support the Commission's finding of causation. This cross assignment of error is without merit.

VI.

For the reasons stated we vacate and remand to the Full Commission for additional proceedings consistent with this opinion.

Vacated and remanded.

Judge ORR concurs.

Judge COZORT dissents.

Judge COZORT dissenting.

I respectfully dissent.

The majority has concluded that this matter must be remanded "for findings of fact on the question of whether decedent had a concurrent business purpose for travelling to Hound Ears on 27 June 1987." I do not believe such remand is necessary, because I find the Industrial Commission has resolved the determinative issue presented.

Judicial review of appeals from the Industrial Commission is limited to two questions: (1) was there any competent evidence to support the Commission's findings? and (2) do the findings of the Commission justify its legal conclusions and decision? *McBride v. Peony Corp.*, 84 N.C. App. 221, 225, 352 S.E.2d 236, 239 (1987). The Commission's findings of fact are conclusive on appeal, even if there is evidence which would support a contrary finding. *Sanderson v. Northeast Construction Co.*, 77 N.C. App. 117, 121, 334 S.E.2d 392 (1985).

The evidence below obviously requires application of the "dual purpose rule," which the majority acknowledges. What the majority fails to acknowledge is that the Commission resolved the factual issue presented under the dual purpose rule. In *Humphrey v. Laundry*, 251 N.C. 47, 110 S.E.2d 467 (1959), our Supreme Court said:

"The test in brief is this: If the work of the employee creates the necessity for travel, such is in the course of his employment, though he is serving at the same time some purpose of his own. * * * If however, the work has had no part in

MURRAY v. ASSOCIATED INSURERS, INC.

[114 N.C. App. 506 (1994)]

creating the necessity for travel, if the journey would have gone forward though the business errand had been dropped, and would have been canceled upon failure of the private purpose, though the business errand was undone, the travel was then personal, and personal the risk."

*Id.* at 51, 110 S.E.2d at 470 (quoting *Marks' Dependents v. Gray*, 251 N.Y. 90, 167 N.E. 181).

In Finding of Fact 18, Deputy Commissioner W. Joey Barnes found, in a finding adopted by the Full Commission:

18. There was no employment-related purpose which created the necessity for Mr. Murray's trip on 27 June 1986. Mr. Murray was traveling to Hound Ears for a social and relaxing weekend with his wife. Mr. Murray's work did not create the necessity for travel.

In their brief, plaintiffs have failed to challenge that crucial finding. Even if they had, there is evidence to support the finding. We are thus bound by that finding.

In his conclusions of law, Deputy Commissioner Barnes concluded, in a conclusion adopted by the Full Commission:

5. Assuming arguendo that the "dual purpose rule" is applicable to the present case, inasmuch as Mr. Murray's trip would have been made despite the failure of any business purpose for the weekend in question and would have been dropped in the event of the failure of the private purpose, Mr. Murray's trip was a personal trip and, therefore, Mr. Murray's death as a result of the collision on 27 June 1986 is not compensable under the North Carolina Workers' Compensation Act. Id.; N.C.G.S. § 97-2(6).

Plaintiffs have not contested that conclusion of law, which controls the key issue in the case. We should not get sidetracked by the Full Commission's confusing references to the decedent's purpose in meeting his wife for dinner. We should disregard that language as surplusage, recognize that Deputy Commissioner Barnes resolved the dual purpose rule issue presented by the evidence, and affirm the Commission's decision to adopt the Opinion and Award of Barnes. I see no useful purpose in remanding the matter for findings on an issue already resolved by the Commission. I vote to affirm.