The undersigned have reviewed the Award based upon the record of the proceedings before the Deputy Commissioner.
The appealing party has shown good grounds to reconsider the evidence as it relates to a 97-88.1 award of attorneys' fees. Upon reconsideration of the evidence, the undersigned reach a different conclusion than that reached by the Deputy Commissioner as to this award. However, upon reconsideration of the entirety of the evidence, the undersigned reach the same findings of fact and conclusions of law as the Deputy Commissioner as to the remainder of the issues contended by defendants. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and ultimate award.
The Full Commission adopt as their own all findings of fact found by the Deputy Commissioner, with modification to Finding of Fact Numbers 7 and 12, and some technical modifications, as follows:
FINDINGS OF FACT
1. Plaintiff is an unemployed, 73 year-old married male who has been a Johnston County resident since 1943. He only reached the tenth grade and has never received any further vocational training. Rather, all his training has been "on the job". His other prior work experience has involved working for many years at Johnson Cotton Company (which is a furniture and farm machinery business), operating his own furniture store, and working as a security guard at the Channel Master and Sylvania plants.
2. In 1987 plaintiff became employed by defendant National Health Labs as a courier responsible for picking up blood specimens at doctors' offices in his assigned territory for testing. He was provided a company vehicle to use in his work.
3. Initially plaintiff worked in the Raleigh and Kinston areas. However, for the two or three years preceding the date in question he had been assigned to the Fayetteville area, which included the towns of Rockingham, Hamlet, Laurinburg, Maxton, and Raeford, among others, and required him to drive an average of 200 miles daily.
4. Plaintiff's duties as a courier required him to operate a vehicle on the public highway in the course of picking up blood specimens in his assigned territory for testing by defendant-employer. The vehicle he operated was provided by the employer for this purpose. His position not only subjected him to a peculiar hazard — the highway but also placed him in a position to increase the dangerous effects in the event of blacking out while operating his assigned vehicle. This entailed losing control of the moving vehicle and running off the roads sustaining severe injuries as occurred on the February 5, 1993 date in question.
5. On the date in question, he was in route in the company car assigned him to pick up blood specimens from physicians in Maxton as part of his duly assigned ordinary employment duties as a courier for defendant-employer. Plaintiff blacked out, lost control of his vehicle, and ran off the road. This resulted in the near fatal chest injuries that are more fully hereinafter described. These injuries occurred in the course of his employment because they occurred during his regular work hours while he was operating his assigned company vehicle in route to pick up blood specimens for testing. They also rose out of the same employment for the reasons described in Finding of Fact Number Four.
6. Plaintiff's black-out was cardiovascular in etiology, either due to a cardiac arrhythmia or a transient ischemic attack with a resulting interruption of the blood supply to the brain. As previously stated, plaintiff's employment placed him in a position to increase the dangerous effects of such an idiopathic black-out.
7. This matter was not defended without reasonable ground or based on stubborn, unfounded litigiousness as to either compensability or extent of plaintiff's disability as defendants had an arguable, plausible position in both areas.
8. As a result of his February 5, 1993 vehicular accident, plaintiff sustained severe and nearly fatal chest injuries, including chest wall contusions, a fractured sternum, multiple rib fractures and a collapsed left lung or pneumothorax with associated subcutaneous emphysema. This collapsed lung materially aggravated the existing chronic obstructive lung disease that he had developed from his prior history of infectious bronchitis and was manifested by symptoms of wheezing and mild dyspnea (shortness of breath), thereby proximately contributing to his ultimate disability.
9. Plaintiff's near fatal chest injuries not only required him to be hospitalized for five weeks, but also required him to be placed on a ventilator because of initially being unable to breathe on his own. In addition, he required a chest tube for his left pneumothorax and a stomach tube for feeding. With treatment, however, plaintiff made a remarkable recovery from his injuries. Although plaintiff still required oxygen when discharged from the hospital, he no longer does.
10. By July 19, 1993 he was released to return to work by all his physicians at maximum medical improvement and/or the end of the healing period from and following his February 5, 1993 injuries.
11. Due to the severe chest injuries involved, plaintiff's existing chronic obstructive lung disease was materially aggravated. He required prolonged intubation, ventilation and pneumatometry (suctioning or clearing his lungs), thereby destroying the lung tissues normal architecture and resulting in him being more prone to developing lung infections. In fact he has developed such infections on at least two occasions since his hospital discharge. He also has permanent lung injuries manifested by the more severe dyspnea (shortness of breath) he now suffers.
12. By July 19, 1993, when plaintiff was released by all of his physicians to return to his regular courier's job, plaintiff was ready, willing and able to return to the same job had the job been available. This job would have involved the type of light work required by his permanent lung injuries. He specifically asked for his old job. However, defendant-employer refused to provide it for him (although he had been released to return work driving by his physicians and had undergone an extensive cardiovascular evaluation as well as corrective surgery for his blocked cartorid arteries in June of that year.) Instead, defendant-employer offered plaintiff a job at its lab in Winston-Salem. Assuming arguendo that the job was a physically suitable one, it would have required plaintiff to move to Winston-Salem from Johnston County, where he had resided for the last 40 years and where all of his family still lives, thereby justifiably excusing plaintiff's refusal to accept the job.
13. Defendant-employer has not since offered to provide plaintiff his regular courier's job or otherwise suitable employment nor has it engaged the services of a vocational rehabilitation specialist to assist plaintiff in obtaining suitable work. Although plaintiff has applied for several security jobs and continues to look for such work, he has been unable to find any. To the extent defendants now desire to engage the services of a vocational rehabilitation specialist to assist plaintiff in obtaining suitable employment, he is obligated to cooperate in any reasonable vocational rehabilitation attempts.
14. There is further no convincing evidence that the type of suitable light duty work required by plaintiff's permanent lung injuries is currently available for someone of his age, education, background and work experience with the physical limitations he does — much less that he can obtain it at this time.
15. Between February 5, 1993 and August 19, 1993 after he had initially exhausted his accumulated vacation and sick leave, plaintiff received $11.00 a week under a non-contributory short-term disability plan defendant-employer provided for its employees, which was not due and payable under the Workers' Compensation Act because of the same employer's denial of the involved claim. Defendants are entitled to a credit under the provisions of G.S. 97-42 against the present award of compensation benefits. Under the terms of the same statute defendant-employer is not entitled to a credit for the $93.00 a month in retirement benefits plaintiff receives.
16. Based on the stipulated Form 22 Statement of Days Worked and Earnings of Injured Employee dated August 4, 1994 and prepared by defendant-employer, plaintiff earned an average weekly wage of $318.22 at the time of his injury, which yields a compensation rate of $212.16.
* * * * * * * * * * * * * *
Based upon the findings of fact as found by the Deputy Commissioner and adopted by the Full Commission, the Full Commission find as follows:
CONCLUSIONS OF LAW
1. On February 5, 1993 plaintiff sustained an injury by accident arising out of and in the course of his employment, which materially aggravated his existing, but then non-incapacitating, chronic obstructive lung disease and thereby proximately contributed to his ultimate disability. G.S. 97-2 (6). Anderson vs. Northwestern Motor Company,233 N.C. 372, 64 S.E.2d 265 (1951); Allred vs. AllredGardner, Inc., 253 N.C. 544, 117 S.E.2d 476 (1960); Vause vs.Vause Farm Equipment Company, 233 N.C. 88, 63 S.E.2d 173
(1950); Murray vs. Associated Insurers, 114 N.C. App. 506,442 S.E.2d 370 (1994).
2. As a result of the permanent lung injuries sustained on February 5, 1993 plaintiff has remained totally disabled since February 5, 1993, entitling him to compensation at a rate of $212.16 per week from February 5, 1993 to the scheduled hearing date and thereafter continuing at the same rate so long as he remains totally disabled, subject to defendant-employer being entitled to a credit for the short-term disability benefits that plaintiff received during the period from February 5, 1993 to August 19, 1993 after initially exhausting his accrued vacation time and sick leave that were payable under a non-contributory short-term disability plan defendant-employer provided for its employees, which were not due and payable under the Workers' Compensation Act by virtue of the same employer's denial of the involved claim. G.S. 97-29, G.S. 97-42.
3. For the reasons stated in Finding of Fact Number 7, in the discretion of the undersigned, plaintiff's counsel is not entitled to attorneys' fees pursuant to G.S. 97-88.1.
* * * * * * * * * * * * * *
Based upon these conclusions of law, the Full Commission have determined there exists no basis for amending the Award. Accordingly, the foregoing stipulations, findings of fact, and conclusions of law engender the following:
AWARD
1. Defendants shall pay plaintiff, on account of his continuing disability, compensation at a rate of $212.16 per week during the period from February 5, 1993 to the scheduled hearing date and thereafter continuing at the same rate so long as he remains disabled, subject to a credit for the $11.00 a week defendant-employer paid plaintiff during the period from February 5, 1993 to August 19, 1993 after he had initially exhausted his accrued vacation and sick leave time under the above-described non-contributory group disability plan provided by defendant-employer for its employees, which were not due and payable under the Workers' Compensation Act by virtue of the same employer's denial of the involved claim. Such compensation as has accrued hereunder shall be paid in lump sum, without commutation, subject to a reasonable attorney fee hereinafter approved.
2. A reasonable attorney fee in the amount of twenty-five (25) percent of the accrued net compensation benefits due under the above award is hereby approved for plaintiff's counsel.
3. To the extent the same are reasonably designed to tend to effect a cure of, provide needed relief from and/or lessen the period of disability associated therewith defendants shall pay all reasonable and necessary medical expenses incurred by plaintiff as a result of the injury by accident giving rise hereto when bills for the same are submitted on proper forms, through defendant-carrier, to the Industrial Commission for approval and are approved by the Commission.
4. Defendants shall bear the costs.
This the __________ day of ________________________, 1995.
 S/ _________________ J. HOWARD BUNN, JR. CHAIRMAN
CONCURRING:
S/ _________________ J. RANDOLPH WARD COMMISSIONER
S/ _________________ GREGORY M. WILLIS DEPUTY COMMISSIONER
JHB/nwm 06/07/95