* * * * * * * * * * *
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Stephenson and the briefs and arguments on appeal. The plaintiff has shown good grounds to reconsider the evidence. Based on its reconsideration of the evidence, the Full Commission finds different facts than those found by the Deputy Commissioner and reverses the conclusions of law and the award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as a matter of law the following which were entered into as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. Risk Management Services Incorporated is the carrier on the risk.
3. An employer-employee relationship existed on the alleged date of injury of December 18, 2003.
4. Plaintiff's average weekly wage pursuant to payroll records equals $986.32. Plaintiff's corresponding compensation rate equals $656.88.
5. The parties stipulated to the following exhibits:
(1) All of plaintiff's medical records.
(2) Industrial Commission Forms.
(3) Plaintiff's Job Description.
 (4) Plaintiff's Personnel and Payroll Records Maintained by Defendant.
(5) North Carolina Highway Patrol Accident Report.
(6) Dunn Rescue Squad Accident Report.
 * * * * * * * * * * *
Based upon the greater weight of the competent and credible record evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 59 years old and had worked as a truck driver for defendant-employer from 1983 until December 18, 2003. Plaintiff drove a tractor-trailer for defendant, consisting of a Volvo tractor and a forty-five foot trailer.
2. On December 18, 2003, plaintiff drove his tractor-trailer at a relatively high rate of speed into two or three trailers parked at defendant's loading dock in Dunn. The cab of plaintiff's tractor was demolished as a result of the force of the accident. Emergency personnel needed forty-five minutes to extricate plaintiff from the tractor's cab.
3. Plaintiff cannot recall the events of December 18, 2003.
4. Richard Stump, a Dunn Rescue Squad EMT Paramedic, joined other emergency personnel in responding to plaintiff's accident. Stump initially treated plaintiff at the crash site by climbing on the engine of the truck and in through the shattered front windshield. Stump observed at that time that plaintiff was alert, knew his name and was aware that he was at Food Lion. Stump observed plaintiff moving as best he could in the demolished cab, including both his arms. Stump also observed that plaintiff had good grip strength in both hands. Stump observed that the pupils in plaintiff's eyes were normal, equal, round, and reactive to light. Stump further observed many lacerations and cuts on plaintiff's face and neck. However, as the extraction progressed, plaintiff's pulse became increasingly weak.
5. After plaintiff was extracted from the wreckage, the team of paramedics, including a helicopter rescue team from UNC Hospital, chemically paralyzed plaintiff and intubated him before air lifting him to UNC Hospital in Chapel Hill, NC, for additional medical treatment. After plaintiff's physicians at UNC Hospitals released him, he participated in patient rehabilitation at the Southeastern Regional Rehabilitation Center in Fayetteville, NC. After plaintiff completed his rehabilitation at Southeastern, plaintiff moved to the Mary Gran Nursing Center in Clinton, NC. Plaintiff subsequently moved to a senior citizens village in Dunn, NC. 6. This case is concerned specifically with the causation of plaintiff's stroke and the resulting disability, as his other injuries from the accident were settled by a Partial Compromise Settlement Agreement on November 1, 2004.
7. Upon plaintiff's arrival at UNC Hospital on December 18, 2003, plaintiff was placed on a red trauma activation status, most severe level, and initially attended by Dr. Preston Rich, a trauma care specialist. By the time plaintiff was admitted to UNC Hospital, Dr. Rich found that the left side of plaintiff's body was paralyzed, or in medical terms, he had left hemiparesis. Dr. Rich observed the following injuries: subaraehnoid hemorrhage, a broken bone in plaintiff's left leg and the left hip was dislocated, a right internal carotid artery dissection, a right middle cerebral artery infarct, multiple lacerations about plaintiff's body including the right side of his neck along the carotid artery, and additional lacerations about plaintiff's head, legs, and hands. In layman's terms, the right internal carotid artery dissection and the right middle cerebral artery infarct are called a stroke. Plaintiff also treated with Dr. Zaatreh, a neurologist, at UNC Hospital for the resulting problems after his stroke.
8. All three doctors deposed in this case agree on the nature of plaintiff's stroke. First, plaintiff's right internal carotid artery dissected, which led the artery to occlude, or block, which stopped the blood flow to plaintiff's brain, thereby causing his stroke or infarct. Dr. Rich testified that this process involved a piece of the wall of plaintiff's artery tearing off and the torn piece creating a flap, which then blocked the flow of blood through the artery to plaintiff's brain, thereby causing a stroke. All three physicians deposed in this ease agreed that blunt trauma to an artery can cause the artery to dissect or tear and cause a blockage and stroke.
9. The disagreement in this case between plaintiff's treating physicians, Dr. Rich and Dr. Zaatreh, and the defendants' second opinion doctor, Mitch Freedman, M.D., who has never treated plaintiff, concerns how plaintiff's artery dissected or tore in the first place. Drs. Rich and Zaatreh believe the artery was torn as a result of trauma in the accident. Dr. Freedman believes the artery tore as a result of natural causes and that the torn-artery stroke caused plaintiff to lose control of the truck.
10. Dr. Rich and Dr. Zaatreh both personally treated plaintiff while he was at UNC Hospital. Both physicians observed, and the medical record indicates, that plaintiff had blunt trauma to the right side of his neck. Dr. Rich described in his deposition that plaintiff had a cut on the right side of his neck, located directly over his carotid artery. Further, the stipulated medical records from UNC Hospital show that a CT scan of plaintiff's neck showed a soft tissue injury along the mid right neck with air seen in the jugular veins of the right neck.
11. Dr. Rich emphasized:
 The other important piece of information was that he had clear evidence of trauma to his neck. . . . [I]t was clearly a marker that he had sustained blunt force trauma to that neck, which is directly overlying the carotid artery on that side.
12. Dr. Rich also indicated in his deposition that dissections like plaintiff's most commonly occur with trauma to the area. Based on Dr. Rich's personal treatment of plaintiff and a review of plaintiff's medical record he did not believe that this stroke was something caused by a pre-existing condition.
13. Dr. Rich opined to a reasonable degree of medical certainty, and the Full Commission finds as fact, that the blunt force from the accident to plaintiff's neck was the proximate event that caused the arterial dissection that resulted in his stroke. And the stroke was what caused plaintiff to be paralyzed on the left side of his body. Based upon the fact that plaintiff's neck showed evidence of trauma and the artery directly below that trauma is where the dissection occurred, it was most reasonable to Dr. Rich, and the Full Commission finds as fact, that the trauma sustained in the truck accident on December 18, 2003, at the Food Lion warehouse in Dunn caused plaintiff's stroke.
14. Dr. Zaatreh, plaintiff's treating neurologist at UNC Hospital, agreed with Dr. Rich that the cause of plaintiff's stroke was due to trauma to his neck along the carotid artery. Dr. Zaatreh also indicated in his deposition, and the Full Commission finds as fact, that plaintiff's stroke was not likely caused by any pre-existing condition. Asked directly whether plaintiff had any predisposing conditions in his arteries that may have caused this stroke Dr. Zaatreh stated plaintiff did not. Based upon the circumstances of this accident, and the trauma to plaintiff's neck, Dr. Zaatreh stated that the stroke was most likely a result of the trauma to plaintiff's neck that he sustained in the truck accident on December 18, 2003, at the Food Lion warehouse in Dunn, North Carolina. Dr. Zaatreh opined to a reasonable degree of medical certainty, and the Full Commission finds as fact, that the dissection that led to plaintiff's stroke was the result of trauma and not any pre-existing condition. Dr. Zaatreh stated specifically in regard to the causation of plaintiff's stroke:
 One can speculate that it could be other reasons. But the most likely explanation is the explanation I stated before. Secondary to dissection, secondary to trauma.
15. Plaintiff was treated at UNC Hospital at Chapel Hill, North Carolina until January 16, 2004. He was then transferred to Southeastern Regional Rehabilitation Center in Fayetteville, North Carolina, where he was treated for his injuries until March 22, 2004, with Dr. Carolyn McDonald. During his treatment with Dr. McDonald, plaintiff continued to exhibit left hemiparesis.
16. Plaintiff was discharged home from the Southeastern Regional Rehabilitation Center on March 22, 2004, but upon his arrival his wife, Mrs. Patsy Lewis, was unable to care for him. Mrs. Lewis had had a hip replacement surgery two years previously and was physically unable to care for plaintiff due to his paralysis.
17. Plaintiff was admitted to Betsy Johnson Hospital in Dunn, North Carolina, for further treatment for his injuries in the accident. Plaintiff went from Betsy Johnson to full-time care at the Mary Gran Nursing Home in Clinton, North Carolina. Due to the high cost of round-the-clock care at Mary Gran, plaintiff was transferred to the Senior Citizens Village in Dunn, North Carolina, where he currently resides, and where he receives full-time health care due to his paralysis. Plaintiff's primary treating physician at this time is Dr. John Midgley of Dunn, North Carolina.
18. Mrs. Lewis testified, and the Full Commission finds as fact, that plaintiff's left side is still paralyzed and that she is unable to care for him at their home. Plaintiff requires full-time health care today due to his stroke from the accident on December 18, 2003.
19. Dr. Zaatreh indicated that, due to the severity of plaintiff's stroke, it is unlikely that he will be back to baseline where he was before the stroke. Further, Dr. Zaatreh stated that, due to the limitations from the stroke, in the future plaintiff will require assistance with his daily activities.
20. Dr. Rich also stated his medical opinion that plaintiff could not perform his job as an over-the-road truck driver for Food Lion due to the paralysis from his stroke caused by the accident on December 18, 2003. At this time plaintiff is not only completely disabled from performing his work at Food Lion, but is disabled from even caring for himself on a daily basis. Plaintiff is still paralyzed on the left side of his body; however, his condition appears to have stabilized at this time. Dr. Midgley stated that plaintiff has reached maximum medical improvement.
21. While driving his truck to the Food Lion warehouse in Dunn, North Carolina, on December 18, 2003, and while crossing the parking lot to the loading dock, for some unknown reason plaintiff lost control of the truck and smashed into several other parked trucks, becoming entrapped in the wreckage. Plaintiff sustained blunt force trauma in the accident which caused a stroke. Plaintiff's job of truck driving placed him in a perilous position such that he was likely to sustain severe bodily injuries if he blacked out or otherwise became incapacitated while driving the truck. The blunt force trauma and resulting stroke were the proximate result of an accident arising out of and during the course and scope of plaintiff's employment. Treatment for this stroke and its sequelae are compensable under the North Carolina Workers' Compensation Act.
22. As a result of his compensable injury, plaintiff has been unable to earn any wages since December 18, 2003. Plaintiff's inability to earn wages is total and permanent.
 * * * * * * * * * * *
Based upon the foregoing findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. In order to recover for an injury under the North Carolina Workers' Compensation Act, plaintiff has the burden of proving three elements: (1) that he suffered an injury by accident; (2) that such injury arose out of the employment; and (3) that such injury arose in the course of the employment. Wilson v. Town ofMooresville, 222 N.C. 283, 284, 22 S.E.2d 907, 910 (1942). Plaintiff has met all three tests.
2. Plaintiff must prove medical causation of his alleged injury by accident through the testimony of his medical experts, who must provide "sufficient competent evidence tending to show a proximate causal relation" between the alleged injury and the plaintiff's subsequent medical condition. Holley v. Acts, Inc.,357 N.C. 228, 232, 581 S.E.2d 750, 753 (2003) (citation omitted). Plaintiff met this burden through the testimony of his treating physicians.
3. We do not find that plaintiff's accident was a result of an idiopathic condition. Even if it had been, under the circumstances of this case it would still be compensable. As our Court of Appeals stated in Murray v. Associated Insurers, Inc.,114 N.C.App. 506, 518-19, 442 S.E.2d 370, 378 (1994), rev'd onother grounds, 341 N.C. 712, 462 S.E.2d 490 (1995):
 When an employee's idiopathic condition is the sole
cause of the injury, the injury does not arise out of the employment. Vause v. Vause Equipment Co., 233 N.C. 88, 63 S.E.2d 173 (1951). However, "[w]here any reasonable relationship to the employment exists, or employment is a contributory cause, the court is justified in upholding the award as `arising out of employment.'" Allred v. Allred-Gardner, Inc., 253 N.C. 554, 557, 117 S.E.2d 476, 479 (1960).
 In Allred v. Allred-Gardner, Inc., 253 N.C. 554, 117 S.E.2d 476 (1960), the plaintiff sustained severe injuries when his vehicle collided with a pole. There the plaintiff was returning to his employer's place of business from a service call when he "blacked out," lost control of his vehicle, and ran into a pole. Our Supreme Court held that the plaintiff's accident arose out of his employment even though his blackout caused the accident.
 Two circumstances, we think serve to fix liability on the defendants in this case:
 First, a blackout to which the claimant had a predisposition; second, the blackout occurred at the time and place the claimant's duties required him to be driving an automobile. The combination of these two produced the accident. In the light of our decisions, the plaintiff's injury may be said to arise out of and in the course of his employment.
 Id. at 557-58, 117 S.E.2d at 479.
 Here, there is no direct evidence of record that decedent's stroke caused the accident. If the cause of an employee's injury in the course of his employment is unknown and the Commission finds that the injury arose out of the employment, an award will be sustained. Cole v. Guilford County, 259 N.C. 724, 727, 131 S.E.2d 308, 311 (1963). However, even assuming arguendo that decedent's stroke did cause the accident, under Allred, supra, decedent's accident arose out of his employment if decedent was in the course of his employment at the time of the accident.
4. Plaintiff is entitled to compensation at the rate of $656.88 per week from December 18, 2003, for the reminder of his natural life. N.C. Gen. Stat. § 97-29.
5. Plaintiff is entitled to medical compensation by reason of his compensable injuries, including assistance with his daily activities. N.C. Gen. Stat. §§ 97-25, 97-25.1.
 * * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Subject to attorneys fees set forth below, defendants shall pay to plaintiff $656.88 per week starting December 18, 2003, and continuing for the reminder of plaintiff's life. Defendants shall pay directly to plaintiff's counsel 25% of the compensation otherwise due plaintiff. After any lump sum amount has been paid, defendants shall pay every fourth check directly to plaintiff's counsel.
2. Defendants shall pay, or reimburse those who paid, at rates in accordance with the Commission's medical fee schedule, all medical compensation reasonably incurred to provide relief, effect a cure, or lessen the period of plaintiff's disability, including pain management and assistance with daily activities. N.C. Gen. Stat. § 97-25.
3. Defendants shall pay the costs
This 16th day of March 2006.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/_____________________ BUCK LATTIMORE CHAIRMAN
 S/_____________________ LAURA KRANFELD MAVRETIC COMMISSIONER