ROBERT C. VAUSE (EMPLOYEE) v. VAUSE FARM EQUIPMENT COMPANY, INC. (EMPLOYER), TRAVELERS INSURANCE COMPANY (CARRIER).

(Filed 2 February, 1951.)

**1. Master and Servant § 40c—**

"Arising out of" the employment as used in the Workmen's Compensation Act refer to the origin or cause of the accident, and required that the accident be a natural and probable consequence of the employment or incident to it, so that there be some causal relation between the accident and the performance of some service of the employment.

**2. Master and Servant § 40d—**

"In the course of" the employment as used in the Workmen's Compensation Act refer to the time, place, and circumstances under which the accident occurs.

**3. Master and Servant § 37—**

While the Workmen's Compensation Act eliminates the question of negligence as a basis for recovery thereunder, it is not the equivalent of general accident or health insurance, but provides for compensation only for those injuries by accident which arise out of and in the course of the employment.

**4. Master and Servant § 40c—**

In order for an accident to arise out of the employment it is not required that a hazard of the employment be the sole cause of the accident, but it is sufficient if the physical aspects of the employment contribute in some reasonable degree toward bringing about or intensifying the condition which renders the employee susceptible to the accident and consequent injury.

**5. Same—**

Injury due to a fall in an epileptic fit may be compensable if a particular hazard inherent in the working conditions also contributes to the fall and

consequent injury, so that after the event it may be seen that the accident had its origin in the employment.

**6. Master and Servant § 55d—**

A finding of the Industrial Commission is conclusive on appeal if supported by evidence, even though the evidence upon the entire record might support a contrary finding, but a finding not supported by evidence is not conclusive and the courts may review the evidence to determine this question.

**7. Master and Servant § 40c—**

Whether an accident arises out of the employment is a mixed question of fact and of law.

**8. Same—Evidence held insufficient to show that injury from fall caused by epileptic fit arose out of the employment.**

The evidence tended to show that plaintiff employee was subject to epileptic fits, that while driving the employer's truck in the course of his employment he felt a seizure approaching, stopped the truck on the side of the road, opened the door and lay down on the seat of the truck with his head on the seat opposite the steering wheel and his feet hanging out of the truck, that he immediately suffered an epileptic seizure causing him to lose consciousness, and that when he "came to" his body was on the outside of the truck and his hands on the steering wheel. The expert medical testimony was to the effect that the employee had suffered broken bones caused by the fall from the seat of the truck and that the fall resulted from the epileptic seizure. *Held:* The evidence discloses that the sole cause of the employee's moving from a position of safety to his injury was the epileptic seizure, and therefore the fall was independent of, unrelated to, and apart from the employment, and the evidence cannot support a finding of the Industrial Commission that the injury resulted from an accident arising out of the employment.

APPEAL by defendants from *Stevens, J.,* at February Civil Term, 1950, of CUMBERLAND.

Proceeding under Workmen's Compensation Act, filed by the plaintiff to recover compensation for disability resulting from an injury sustained by him 2 August, 1948, in a fall while suffering an epileptic seizure. The evidence tends to show that the plaintiff was president and general manager of the defendant employer; that he also served as an employee, devoting substantial time to the performance of manual labor; that the plaintiff, while driving a pick-up truck in the course of his employment to the home of a customer for the purpose of servicing a tractor, became faint and ill but was able to stop. He pulled the truck over to the side of the road and parked, then opened the door on his left, threw his feet outside, and lay down on the seat of the truck with his head on the side opposite from the steering wheel, and immediately suffered an epileptic seizure that caused him to lose consciousness. When he "came to," he was hanging to the steering wheel with his hands; his body was outside

of the truck with one foot on the running board and the other dangling side of it. He was trying to pull himself up in the cab. It was about three feet from the seat of the truck to the running board, and about eighteen inches from the running board to the ground.

The Industrial Commission found that the "plaintiff, as soon as he lay down, became unconscious and on account of his illness or seizure moved on the seat of the truck while in an unconscious condition and fell from the seat of the truck to the running board or ground. . . . that as a result of the fall from the seat of the truck to the running board of the truck or ground, the plaintiff employee suffered a fracture and dislocation of the hip and socket and also a fracture of one of the bones of the pelvis."

The decision of the Industrial Commission was made to turn on the following further finding of fact: "G. The question of whether or not the plaintiff employee as a result of the work was subject to any greater hazard than the public generally is subjected to is a very close one and has given the Commission much difficulty in arriving at a satisfactory conclusion. Unquestionably the plaintiff employee was required to drive the truck on account of his business. The question, therefore, is whether or not the driving of a motor vehicle constitutes a greater hazard for a fall and injury resulting therefrom than the public generally is subjected to. Many people drive automobiles. Many people drive trucks. However, this is a question of fact as well as law, and after a careful study of the question the Commission is of the opinion and finds as a fact that the plaintiff employee, in being required to drive the truck to perform his work, was subjected to a peculiar hazard or to a greater risk as an incident of his employment than the public is ordinarily subjected to."

The Commission, in awarding compensation, found and concluded "that the fall which the plaintiff suffered was the direct and proximate cause of his disability rather than his seizure. . . . that the plaintiff was subjected to a peculiar hazard as an incident to his work which resulted in his disability, and that said plaintiff suffered an injury by accident . . . arising both out of and in the course of his employment . . . which resulted in said disability."

On appeal to the Superior Court, the award of the Commission was affirmed. The defendants excepted and appealed to this Court.

*Nance & Barrington* for plaintiff, appellee.

*H. L. Anderson* and *Smith, Leach & Anderson* for defendants, appellants.

JOHNSON, J. The decisive question presented here is: Was there any evidence before the Industrial Commission upon which it could make a finding of fact that plaintiff was injured by an accident arising out of

his employment? A careful study of the record impels a negative answer. All of the evidence below points to the plaintiff's epileptic seizure as the sole cause of his injury.

The Workmen's Compensation Act expressly provides that a "personal injury" entitling an employee to an award of compensation "shall mean only injury by accident arising out of and in the course of the employment, and shall not include a disease in any form, except where it results naturally and unavoidably from the accident." G.S. 97-2 (f); and G.S. 97-3. The words "out of" refer to the origin or cause of the accident, and the words "in the course of" to the time, place, and circumstances under which it occurred. *Withers v. Black,* 230 N.C. 428, 53 S.E. 2d 668; *Taylor v. Wake Forest,* 228 N.C. 346, 45 S.E. 2d 387; *Plemmons v. White's Service, Inc.,* 213 N.C. 148, 195 S.E. 370; *Ridout v. Rose's Stores, Inc.,* 205 N.C. 423, 171 S.E. 642; *Harden v. Furniture Co.,* 199 N.C. 733, 155 S.E. 728.

An injury arises "out of" the employment when it occurs in the course of the employment and is a natural and probable consequence or incident of it, so that there is some causal relation between the accident and the performance of some service of the employment. *Rewis v. Insurance Co.,* 226 N.C. 325, 38 S.E. 2d 97. The term "arising out of," says *Chief Justice Stacy* in *Bolling v. Belk-White Co.,* 228 N.C. 749, 46 S.E. 2d 838, has been defined to mean as "coming from the work the employee is to do, or out of the service he is to perform, and as a natural result of one of the risks of the employment. The injury must spring from the employment or have its origin therein . . . There must be some causal connection between the employment and the injury."

In the enactment of the Workmen's Compensation Act in 1929, our Legislature recognized that the common law remedies for injuries arising out of industry, based on negligence, were cumbersome, inadequate, and unjust. Therefore, a substitute was provided which broadened the base and liberalized the scope of compensation benefits for industrial injuries. The Act contains elements of mutual concessions between the employer and the employee by which the question of negligence is eliminated. "Both had suffered under the old system, the employer by heavy judgments, . . . the employee through old defenses or exhaustion in wasteful litigation. Both wanted peace. The master in exchange for limited liability was willing to pay on some claims in the future where in the past there had been no liability at all. The servant was willing not only to give up trial by jury, but to accept far less than he had often won in court, provided he was sure to get the small sum without having to fight for it." *Conrad v. Foundry Co.,* 198 N.C. 723, 153 S.E. 266, quoting from *Stertz v. Industrial Ins. Commission,* 91 Wash. 588, 158 Pac. 256.

The philosophy which supports the Workmen's Compensation Act is "that the wear and tear of human beings in modern industry should be charged to the industry, just as the wear and tear of machinery has always been charged. And while such compensation is presumably charged to the industry, and consequently to the employer or owner of the industry, eventually it becomes a part of the fair money cost of the industrial product, to be paid for by the general public patronizing such products." *Cox v. Kansas City Refining Co.,* 108 Kan. 320, 195 Pac. 863, 19 A.L.R. 90. However, it must be borne in mind that the Act was never intended to provide the equivalent of general accident or health insurance.

Hence, the fundamental fairness and logic of the requirement that to be compensable an injury must arise "out of" the employment, *i.e.,* it must in some reasonable sense spring from and be traceable to the employment. Accordingly, "where an injury cannot fairly be traced to the employment as a contributing proximate cause . . . it does not arise out of the employment." *Bryan v. T. A. Loving Co.,* 222 N.C. 724, 24 S.E. 2d 751, and cases cited.

The hazards of employment do not have to set in motion the sole causative force of an injury in order to make it compensable. By the weight of authority it is held that where a workman by reason of constitutional infirmities is predisposed to sustain injuries while engaged in labor, nevertheless the leniency and humanity of the law permit him to recover compensation if the physical aspects of the employment contribute in some reasonable degree to bring about or intensify the condition which renders him susceptible to such accident and consequent injury. But in such case "the employment must have some definite, discernible relation to the accident." *Cox v. Kansas City Refining Co., supra.* See also 58 Am. Jur., Workmen's Compensation, Section 247.

Similarly, it is generally held that where an employee is seized with an epileptic fit or dizziness and falls due to such or like causes, even so compensation will be awarded if a particular hazard inherent in the working conditions also contributes to the fall and consequent injury. See Annotations and cases reported therewith: 19 A.L.R. 95; 28 A.L.R. 204; and 60 A.L.R., 1299.

In Schneider's Workmen's Compensation, 3d Ed. (1946) Text Vol. 5, Section 1376, p. 61 *et seq.,* is found an exhaustive treatise on "Falls Due to Dizziness, Vertigo, Epilepsy and Like Causes." The text is grounded on an analysis and collation of what appears to be substantially all of the decided cases on the subject. It appears therefrom that the better considered decisions adhere to the rule that where the accident and resultant injury arise out of both the idiopathic condition of the workman and

hazards incident to the employment, the employer is liable. But not so where the idiopathic condition is the sole cause of the injury.

While there must be some causal connection between the employment and the injury, nevertheless it is sufficient if the injury is one which, after the event, may be seen to have had its origin in the employment, and it need not be shown that it is one which should have been foreseen or expected. *Conrad v. Foundry Co., supra.*

A finding of fact of the Industrial Commission is conclusive on appeal if supported by the evidence. This is so, notwithstanding the evidence upon the entire record might support a contrary finding. *Riddick v. Richmond Cedar Works,* 227 N.C. 647, 43 S.E. 2d 850. However, the findings of fact of the Industrial Commission are conclusive on appeal only when supported by evidence, and the Court, on appeal, may review the evidence to determine as a matter of law whether there is any evidence tending to support the findings. *Hildebrand v. Furniture Co.,* 212 N.C. 100, 193 S.E. 294. Therefore, the determination of whether an accident arose out of the employment is a mixed question of fact and law. *Plemmons v. White's Service, Inc., supra.*

Examining the evidence below in the light of the foregoing principles, it appears that the plaintiff while a student at State College years ago suffered a spine injury which since then has made him subject to epileptic convulsions at intermittent intervals. Dr. W. T. Rainey, who has treated the plaintiff for this condition for the past four or five years, characterized the seizures as "traumatic epilepsy." He said they produced unconsciousness and caused muscular spasms: "that they varied, some of them just a short period of unconsciousness,—just a fleeting, hardly stop, to one in which he would have convulsions in which there would be muscular contractions." The plaintiff testified he could feel one of these seizures when it was coming on. He said "they give me pretty good warning." Just before the events complained of, he felt one coming on: "I became a little nauseated or had a funny feeling in my head." Thus heeding the warning of the approaching seizure, the plaintiff drove the truck off the side of the road and lay down with his head on the side of the seat opposite the steering wheel. He said: "I stopped the truck . . . I opened the door and stuck my feet out. I more or less swung my feet so I could put my head down in the seat. My head was on the opposite side of the seat from the steering wheel." He then lost consciousness. He said the next thing he knew his body was hanging out of the truck: "When I knew anything, I was trying to pull myself back in. Evidently while I was in a subconscious mind I had fell and pulled myself, was trying to pull myself back into the truck because I had hold of the steering wheel, pulling on the steering wheel when I realized anything; but I was still in a daze. . . . I was outside of the truck . . . trying to pull myself back in . . .

had my hands over the steering wheel, with my legs extended out of the truck beyond the running board and the door. . . . I had a severe pain in my left hip. My left leg was out opposite the running board. . . . My left foot was over the running board but not on it. It was extended beyond it, towards the ground . . . my right foot was on the running board. . . . I don't know how long I was in that position in the truck, . . . I finally managed to pull myself back in the truck, because no one came along. . . . I noticed the pain when I first knew anything. My whole left leg was in severe pain. It was a paralyzed feeling."

The record discloses that there were no signs of the car "being hit," and plaintiff testified: there were "no bruises or injuries about me other than the injury mentioned to my hip." The record is silent on the circumstance of whether the surface of the road next to the parked truck showed signs of a fall or scuffle, or whether the character of the soil was such as would or would not likely have disclosed signs of a fall or scuffle.

After getting back in the truck plaintiff drove on home, using his right foot, and called for a doctor. Dr. Rainey testified that he diagnosed the injury as "a fracture and a dislocation of the hip and the socket . . . and one of the bones that form the pelvis had fractured also." He remained in traction for eleven days and left the hospital 29 September. He resumed his work 20 December, 1948. Dr. Farmer said he thought there would be some permanent disability.

Dr. Rainey testified, in answer to a hypothetical question, that the injury resulted from a fall. He also said he could not be absolutely definite about the matter. He testified in part as follows: "Q. Do you have an opinion satisfactory to yourself as to whether or not it was caused by a fall of some type? A. It could have been caused by a fall, yes, sir. Q. Would you say that's your opinion satisfactory to yourself as to the reason, I mean the cause of it? A. Yes, sir. Q. Do I understand you to say that the fall was the cause of it or it could have been the cause of it? A. It could have been the cause of it. Q. From your examination of Mr. Vause, sir, do you have an opinion satisfactory to yourself that a fall was the cause of it from your examination of him in connection with the case? A. If I chose between the fall and the convulsion, I would say the fall caused it. Q. Well, now, is that opinion satisfactory to you as a medical expert? A. Yes, sir."

Dr. William A. Farmer, who treated plaintiff at the hospital, testified that he did not have an opinion satisfactory to himself as to what caused the fracture. He said he did not have an opinion as to whether it was caused by a fall or by muscular spasm during a convulsion. But he did state: "It is my opinion that it is more logical to attribute the fracture and dislocation to his fall from the front seat of his truck rather than muscular action during a convulsive seizure."

All of the evidence tends to show that it was the epileptic seizure that caused the plaintiff to move or fall from his original reclining position on the seat of the truck. Both physicians, testifying in response to hypothetical questions based on facts as related by the plaintiff, stated that assuming such facts to be true, in the opinion of each it was the epileptic seizure that caused plaintiff to move from the reclining position on the seat of the truck to the position in which he found himself when he regained consciousness.

Dr. Rainey's testimony bearing on this matter is in pertinent part as follows: "Q. In the absence of anything else, would you say it (his epileptic seizure) did make him fall or cause him to reach that position on the assumption of the facts that he has given? A. Yes, sir. Q. You say you would? A. Yes, sir."

Dr. Farmer testified as follows on cross-examination: "Q. You did state that, from your opinion from the facts described, that his seizure caused him to move from his original position to the position which he found himself when he came to? A. I believe so."

And on re-direct examination, Dr. Farmer testified as follows: "Q. Now, doctor, by way of explanation, why do you say that in your opinion that the muscular seizure instead of a fall caused him to get out on the side of the truck away from where his head was or to fall there? A. This patient is one that has been previously diagnosed as epileptic and he stated I believe that he did feel one of these coming on, so on that, on those two facts, I base my opinion that it was an epileptic fit that caused him to change position. Q. By that you mean maybe the epileptic fit that caused him to have the fall instead of the epileptic fit that caused him to get out of the truck—You don't mean that, do you, Doctor? A. Well, however he got out, whether he changed positions or whether he fell, I still think that the epileptic seizure caused it. Q. You didn't mean to imply that in your opinion he moved out by reason of an epileptic fit instead of fell out? A. The question was worded he changed positions so I still think that he changed positions due to an epileptic seizure. Q. Whether it was a fall or whether it was a voluntary movement? A. Whether it was a fall. It must not have been voluntary because he states that he wasn't conscious at the time so it must not have been voluntary. Whether it was from a fall or involuntary contraction of the muscles, I don't know, but I think it was from an epileptic seizure."

The foregoing evidence, measured by the applicable principles of law, impels the conviction that this record does not support the Commission's finding and conclusion that plaintiff's injury arose out of the employment.

The plaintiff cites and relies on the decisions in *Rewis v. Insurance Co., supra,* and *DeVine v. Steel Co.,* 227 N.C. 684, 44 S.E. 2d 77. These decisions, however, are distinguishable. In the *Rewis case,* there was an

open question of fact whether the decedent fell to his death because of the slippery condition of the tile floor or because of his pre-existing idiopathic condition. There, the subject's employment took him to a floor which had a particular hazard and the Commission found as a fact that he fell to his death when his "feet slipped on the slick tile." This finding of fact fixed a causal connection between the employment and the accident and being supported by the record, was conclusive on appeal. *Riddick v. Richmond Cedar Works, supra.* In the instant case, the evidence is all one way. The plaintiff's employment left him in a place of safety. It was the sole force of his epileptic seizure that moved him to his hurt. Therefore, his ailment, independent of and apart from any hazard of his employment, was the sole cause of his injury.

In the *DeVine case,* the deceased was required to stand on a cement platform to lower a flag from the flag pole each day. He was found unconscious at the bottom of the flag pole, with ropes of the flag pole tangled with his body, under circumstances tending to show that while engaged in the performance of his duties he had fallen and hit the back of his head on the cement platform, which injury caused his death. The determinative factor sustaining the award was the fact that the exact cause of the fall was undetermined. In such a situation, our decisions, liberally interpreting the Workmen's Compensation Act, indulge the inference that the accident arises out of a hazard of employment, and when the Commission so finds, the finding is conclusive on appeal. The rule which distinguishes the *DeVine case* is explained by *Justice Barnhill* in *Robbins v. Hosiery Mills,* 220 N.C. 246, 17 S.E. 2d 20, as follows: "where the employee, while about his work, suffers an injury in the ordinary course of his employment, the cause of which is unexplained but which is a natural and probable result of a risk thereof, and the Commission finds from all the attendant facts and circumstances that the injury arose out of the employment, an award will be sustained. If, however, the cause is known and is independent of, unrelated to, and apart from the employment, . . . compensation will not be allowed."

In the opinion of the Industrial Commission allowing compensation below, several decisions from other jurisdictions are cited in support of the award. The better considered of these cited cases are distinguishable. In the main, they simply apply the general rule, which is in accord with the decisions of this Court, that where an employee falls from a building, scaffold, ladder, or other place of danger where his employment places him, the accident, if it appears to be incident to and a natural result of a particular risk of the work, may be said to arise out of the employment, even though illness or some pre-existing infirmity may have been a contributing cause of the fall. *Rewis v. Insurance Company, supra; DeVine v. Steel Co., supra; Robbins v. Hosiery Mills, supra.*

In *Mausert v. Albany Builders' Supply Co.,* 250 N.Y. 21, 164 N.E. 729, the deceased was employed as a teamster. While driving his horses over smooth pavement, he fell from his seat, and two wheels passed over his body. Within three hours he died. There was no evidence that his fall was intentional and the carrier disclaimed any attempt to prove intoxication. There was no proof of illness preceding the fall. The Industrial Board made no finding in respect to the cause of the fall, leaving the cause entirely undetermined. There, the fall, being unexplained but appearing to have been naturally incident to the employment, was treated by the Board as *prima facie* evidence that the fall arose out of the employment. The award was upheld by the New York Court under application of the same rule which this Court applied in *DeVine v. Steel Company, supra,* and *Robbins v. Hosiery Mills, supra.*

In *Wicks v. Dowell & Co.,* 2 K.B. (Eng.), 225, 74 L.J.K.B.N.S. 572, 53 Week. Rep. 515, 92 L.T.N.S. 677, 21 Times L.R. 487, 2 Am. Cas. 732, the English Court held that compensation was properly awarded for injuries to a workman employed in unloading a ship, resulting when he, during an epileptic seizure, fell into an open hatchway near which he was required to work, *Collins, M. R.,* stating the accident arose out of the employment "because by the conditions of his employment the workman was bound to stand on the edge of what I might style a precipice, and if in that position he was seized with a fit he would almost necessarily fall over. If this is so, the accident was caused by his necessary proximity to the precipice, for the fall was brought about by the necessity for his standing in that position." The facts which distinguish the *Wicks case* from the one at bar are obvious: There, the location of employee's work was a peculiar hazard. Here, the claimant felt the seizure coming on, stopped the truck, and lay down in a position of apparent safety.

In *Rockford Hotel Co. v. Industrial Commission,* 300 Ill. 87, 132 N.E. 759, 19 A.L.R. 80, an award was upheld where a fireman who in the usual course of his employment, while suffering an epileptic fit, fell into a pit of hot cinders which he was removing from a furnace and was burned to death. The factors which distinguish that case from the one at bar are: (1) There, again, the location of the employee's work involved a peculiar hazard,—he was required to work in close proximity to an open pit, a place of danger; and (2) the workman apparently was seized suddenly and without warning.

In *Shipbuilding Co. v. Webster,* 139 Md. 616, 116 Atl. 842, it was held that the death of a carpenter employed in the construction of a ship was the result of an accident arising out of the employment, where, in stooping to pick up tools from the deck of the ship he was attacked by vertigo or an epileptic fit and fell over backward off the ship, a distance of forty-five feet. In that case, in addition to the natural danger inherent in the

location of the work, there was evidence that the workman slipped on a rivet. Hence, the cause of the accident was an open question of fact, and the finding below that the accident arose out of the employment was sustained on appeal.

In the case of *Gonier v. Chase Companies,* 97 Conn. 46, 115 Atl. 677, 19 A.L.R. 83, Gonier, a painter, suffered an attack of indigestion and fell from a scaffolding eleven feet above the surface which was covered with wooden paving blocks. There, the evidence of the natural risks incident to the elevated location of the place of work provided adequate causal connection between the employment and the injury.

Similarly, most of the other cases cited in the opinion of the Commission are distinguishable from the facts in the instant case.

Conceding that, as found by the Commission, the plaintiff "in being required to drive the truck to perform his work, was (thereby) subjected to a peculiar hazard," even so the evidence here discloses no causal connection between the operation of the truck and the injury. The evidence here shows that the plaintiff felt the epileptic seizure coming on. He pulled the truck off the road, parked it, and lay down on the seat in a place of apparent safety, with all of the ordinary dangers of his employment suspended and in repose. We perceive in this evidence no showing that any hazard of the employment contributed in any degree to the unfortunate occurrence. The evidence affirmatively shows that it was solely the force of his unfortunate seizure that moved him from his position of safety to his injury. The cause of the fall is not in doubt. It is not subject to dual inferences. All of the evidence shows that the cause of the plaintiff's fall was "independent of, unrelated to, and apart from the employment." *Robbins v. Hosiery Mills, supra.* The chain of cause and effect clearly leads in unbroken sequence from the plaintiff's unfortunate physical seizure, brought on by a pre-existing infirmity, to his injury. The award below can be sustained only by disregarding the epileptic seizure as a cause of the injury and by starting in the chain of causation at the point of the fall. To say that the injury was caused by the fall, and thus eliminate from consideration the epileptic seizure as the cause of the fall is not in accord with the fundamental principles by which the law fixes and determines the cause and effect of events. Any such process of reasoning, in effect, would strike out of the Workmen's Compensation Act the provision which requires that an injury to be compensable shall arise "out of the employment." As to whether the scope of the Act should be so extended would seem to be a matter to be pondered by the legislative body rather than the Court.

The judgment of the lower court is

Reversed.