Plaintiff began having significant back problems while employed with defendant Broyhill Furniture in 1991, and became disabled due to his back condition while employed with Hammary Furniture Company after bending or squatting down to count posts he had cut and feeling a sudden, sharp pain in his back. His surgeon testified that:
 "A typical history of disk disease is that there is initial injury and the disk then begins to degenerate, and then over a period of time with wear and tear or with additional stress, the disk ruptures. Or it can rupture initially and then the disk fragment moves away from the nerve roots or the pain eases off and another activity causes it to come in contact with it. . . . [T]he disk injury was initiated by the accident of `91 and then perhaps made worse, perhaps exacerbated by other things that happened after that. But from the history he gave, which was very typical of disk problems, I would think that the injury did occur at the time he relates in `91. Now, the other things afterward made us take a nonsurgical situation and turned it into a surgical situation. . . ."
Depo. of Dr. Glugover, pps. 19 20.
The Deputy Commissioner's findings of fact were based on ample evidence, and are affirmed, based largely on his firsthand evaluation of the witnesses. However, those findings describe a "specific traumatic incident" at Hammary. N.C. Gen. Stat. § 97-2(6). Considering similar facts, our Court of Appeals rejected the argument that an employee seeking to prove a specific traumatic incident should have to show that she was not "exposed to potential injury from bending and squatting separate and apart from her employment. We believe that the answer to this argument is that however she may be exposed apart from her employment her injury occurred while she was working at her assigned duties."Bradley v. E. B. Sportswear, Inc., 77 N.C. App. 450, 452,335 S.E.2d 52 (1985); N.C. Gen. Stat. § 97-2(6). "The effect of the [specific traumatic incident] amendment was to eliminate the need to show an external cause or unusual conditions in order for a worker to receive compensation for a back injury. . . . If the injury arises out of and in the course of employment and is the result of a specific traumatic incident, then the statute as amended mandates that the injury be construed to be `injury by accident'." Caskie v. R. M. Butler Co., 85 N.C. App. 266, 268,354 S.E.2d 242 (1987).
It is clear from the evidence that plaintiff went from having the ability to earn wages to temporary total disability due to the occurrence at the Hammary workplace in 1993, even if most of the damage to his disk may have been done while with his former employer, Broyhill. Unlike some other jurisdictions (see, e.g.,Tenderholt v. Travel Lodge International, 218 Mont. 523, 525,709 P.2d 1011, 1012 (1985) ), North Carolina compensation law makes no exception to the general rule that "the employer takes the employee as he finds him", and bears compensation cost of total disability when the proverbial "straw that breaks the camel's back" arises from its workplace, even if the activity is so commonplace that it could be seen as a natural and probable consequence of a prior injury in a different setting. Vause v.Vause Farm Equipment Co., 233 N.C. 88, 63 S.E.2d 173 (1951);Heatherly v. Montgomery Components, Inc., 71 N.C. App. 377,379-80, 323 S.E.2d 29 (1984). Despite the apparent unfairness of the rule in some situations, it has the utility — recognized with the "last injurious exposure" rule of N.C. Gen. Stat. § 97-57 — of avoiding litigation over degrees of responsibility, and allocating the obligation to the injured worker to the system participant most likely to be in existence and solvent.
Upon review of all of the competent evidence of record with reference to the errors assigned, and finding good grounds to reconsider the evidence, the Full Commission REVERSES the result and enters the following Opinion and Award:
The following were entered into by the parties at the hearing before the Deputy Commissioner as
STIPULATIONS
1. The parties entered into a Pre-trial Agreement dated September 12, 1994, and that document is incorporated into the record [ ].
2. The Industrial Commission shall calculate the plaintiff's average weekly wage from the Form 22 stipulated into evidence.
* * * * * * * *
Based upon all the competent, credible evidence of record, the Full Commission makes the following
FINDINGS OF FACT
1. At the time of hearing before the former Deputy Commissioner, plaintiff was 35 years of age and his most recent employment history included employment with the City of Morganton, Duracel, Broyhill Furniture Industries, Hammary Furniture Company, and, currently Lexington Furniture Company.
2. On February 11, 1991, plaintiff was employed by defendant Broyhill as a tenon machine operator, and had been so employed since 1987. During the first part of the week of February 11, 1991, the plaintiff was bending down to pick up some logs weighing approximately 50 pounds when he felt a sudden pain in his lower back which ran down his leg. Shortly thereafter, he reported the back injury to his foreman, Reggie Carroll, and later in the same week reported the injury to the Plant Personnel Manager, Larry German. He was told by Mr. German that the injury he described was not an accident covered by workers' compensation, and that he would have to obtain medical treatment at his own expense.
3. Reggie Carroll made a written report on the plaintiff's back injury, but did not file it then because the employer's policy did not require that unless medical treatment was rendered.
4. Plaintiff's back pain became worse, so on Friday of the same week, February 15, 1991, he went to the Emergency Room at Valdese General Hospital for treatment. There he gave a history of having hurt his back at work earlier in the week. Plaintiff was given medication, an x-ray was taken, and he was told to take bed rest over the weekend and return if not improved. Plaintiff reported his medical treatment to Reggie Carroll, and the employer paid the bill for said treatment. The bill from Valdese General Hospital indicated that it was for treatment of a workers' compensation claim, and that the principal diagnosis was sprained lumbar region, and which further indicated that on February 11, 1991, the plaintiff was injured when he "was lifting boards upon a machine at work, and strained back, having pain radiating down hip".
5. The plaintiff's back improved slowly, but he continued to experience intermittent pain and problems every two or three months thereafter, mainly after using his back at hard work or long trips in an automobile. Plaintiff missed 3 days of work at Broyhill after the injury due to his back problems.
6. At the time of his injury, plaintiff was earning $8.36 per hour, and his average weekly wage, calculated from the stipulated Form 22, excluding the month of February, 1990 which was not representative of his earnings, is $312.56, yielding a compensation rate of $208.35.
7. Plaintiff's back problems continued to worsen until his pain became so bad that he sought treatment. In November, 1992, he was treated for back problems by a chiropractor, Dr. Bernard E. Tosky, and in early December, 1992, he was treated by Dr. James Melton and personally paid for his treatments. Office notes of Dr. Melton indicate that he examined the plaintiff on November 2, 1992 and November 10, 1992 for complaints of pain in his lumbar region, right hip and right leg, and further indicated that the pain was recurrent and that the plaintiff had strained his back approximately two years earlier.
8. Plaintiff mentioned his back pain to his foreman, Reggie Carroll, and to the Machine Manager, Travis Peak, on several occasions, and on one occasion he was given a back brace by his employer for pain.
9. The plaintiff was terminated by Broyhill in January 1993. Shortly thereafter, in January, 1993, he became employed at defendant Hammary in a job, similar to that he held at defendant Broyhill, at a wage of $8.25 per hour, earned during the few days preceding his injury on or about February 8, 1993. Plaintiff's wages with Broyhill fairly reflected his wage earning capacity prior to that injury.
10. At the time he applied for the job at Hammary, he advised that he had previously hurt his back while at Broyhill, but at the time of application, since he had not been working for several weeks, he was not experiencing any pain or problems with his back.
11. On or about February 8, 1993, while working at Hammary, the plaintiff stooped or squatted down and when he went to rise back up, felt a sudden pain and popping sensation in his lower back. The pain continued and he reported the incident to his Foreman/Supervisor, Chuck Calloway. He told Mr. Calloway that he had injured his back earlier while at Broyhill. He did not seek medical care at that time, but continued to try to work for the remainder of the day. On the next day, February 9, 1993, the plaintiff tried to work for a while, but the pain became too intense. He notified Chuck Calloway that he was going to have to seek medical care. Mr. Calloway told him that he should call defendant Broyhill and ask that they provide medical care, and, if necessary, call the Industrial Commission for direction. The plaintiff was unable to return to work after leaving on February 9, 1993 because of his back problems.
12. The plaintiff called defendant Broyhill's Personnel Department and was denied authorization to seek medical care. He then called the Industrial Commission after which he immediately prepared a Notice of Accident and Claim on February 9, 1993 which was filed with the Commission on February 11, 1993.
13. On February 19, 1993, the plaintiff went to the Emergency Room of Grace Hospital in Morganton, North Carolina, for medical treatment, and was given medication, told to rest and, if not better, to see his physician. A few days later, he saw Dr. James Croft in Morganton, and was shortly thereafter referred to Dr. Donald Glugover, an orthopaedic surgeon, who determined after examination that plaintiff was suffering from an herniated disk at L5-S1.
14. On April 15, 1993, plaintiff was operated on by Dr. Glugover to repair his back injury. In June, 1993, he began receiving vocational rehabilitation services with the North Carolina Division of Vocational Rehabilitation and was paid a nominal amount of money by the Division until he was discharged on September 3, 1993, and thereafter found employment at Lexington Furniture Company.
15. The plaintiff had no problems with his back prior to the incident at Broyhill Furniture the week of February 11, 1991, except for an injury which occurred when he was working for the City of Morganton in 1987, driving a garbage cart. He recalls that he saw a doctor on one occasion for that injury and was released and had experienced no further problems until the incident on February 11, 1991.
16. It was Dr. Glugover's opinion that plaintiff damaged a spinal disk while working at Broyhill Furniture in February, 1991; that his condition subsequently changed, and he needed surgical treatment, at which time "he might have been able to do something [working], but it certainly would have been uncomfortable for him to do it"; that he was released from treatment on September 3, 1993; and, at that time, he had permanent partial disability characterized by his surgeon as, "10 percent whole body disability or a 15 percent lumbar spine disability".
17. Plaintiff was totally disabled from February 9, 1993 until September 14, 1993, when he returned to work at Lexington Furniture Company, as a result of a specific traumatic incident arising out of and in the course of his employment with Hammary Furniture Company on the former date.
* * * * * * * *
Based upon the foregoing findings of fact, the Full Commission makes the following
CONCLUSIONS OF LAW
1. The plaintiff injured his back in a specific traumatic incident on February 11, 1991 arising out of and in the course of his employment with defendant Broyhill. Defendant Broyhill is estopped from pleading the bars of N.C. Gen. Stat. §§ 97-22 and 97-24 because of the negligent misrepresentation with respect to compensation law concerning back injuries made to the plaintiff when he reported the incident. Defendant was not prejudiced by plaintiff's failure to file a timely written report due to actual knowledge of the incident and his treatment at Valdese General Hospital. Defendant Broyhill Furniture shall pay medical compensation expenses incurred prior to February 8, 1993 as a result of the incident and back injury on or about February 11, 1991, when the statements for them have been submitted to its adjusting agent and approved in accordance with the rules of the Commission. N.C. Gen. Stat. §§ 97-2(6); 97-22;97-24; 97-2(19); 97-25; Parker v. Thompson-Arthur Paving Co.,100 N.C. App. 367, 396 S.E.2d 626(1990).
2. As a result of a specific traumatic incident arising out of and in the course of his employment with the defendant Hammary Furniture Company on or about February 8, 1993, plaintiff was temporarily totally disabled from February 9 until September 14, 1993, and retained a 15 percent permanent partial disability of the back, for which he is entitled to compensation at the rate of $208.35 per week, less income received during rehabilitation with North Carolina Division of Vocational Rehabilitation, and medical compensation at defendant Hammary's expense, including sum due the North Carolina Division of Vocational Rehabilitation pursuant to N.C. Gen. Stat. § 143-547. N.C. Gen. Stat. §§ 97-2(6); 97-2(19);97-25 and 97-29; 97-31(23); 97-2(5); 143-547.
* * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
AWARD
1. Defendant Broyhill Furniture Company and its administrator shall pay all medical compensation expenses resulting from the specific traumatic incident and injury of February 11, 1991 incurred prior to February 8, 1993 when the statements for same have been submitted to the adjusting agent and approved in accordance with the rules of the Commission.
2. Defendant Hammary Furniture Company and its adjusting agent shall pay:
 a. Subject to the attorney fee hereinafter approved, temporary total disability benefits at the rate of $208.35 per week in respect to the period February 9, 1993 through September 13, 1993, in one lump sum;
 b. Subject to the attorney fee hereinafter approved, permanent partial disability benefits for 45 weeks at the rate of $208.35 per week, in one lump sum; and
 c. Medical compensation expenses incurred on and after February 8, 1993 when the statements for same have been submitted to the adjusting agent, and approved in accordance with the rules of the Commission; and shall discharge the lien of the North Carolina Division of Vocational Rehabilitation for vocational rehabilitation services rendered to the plaintiff per N.C. Gen. Stat. § 143-547.
3. A reasonable attorney's fee equal to 25% of the compensation herein awarded is approved for plaintiff's counsel and shall paid directly to him.
4. The defendants shall share equally in the costs.
5. It is FURTHER ORDERED that should any award herein be appealed solely on the issue of the party liable, the appellant shall pay the compensation, subject to reimbursement by the other party defendants should it succeed on appeal. N.C. Gen. Stat. § 97-86.1.
 S/ ___________________________ J. RANDOLPH WARD COMMISSIONER
CONCURRING:
S/ _____________________ DIANNE C. SELLERS COMMISSIONER
S/ _____________________ LAURA K. MAVRETIC COMMISSIONER
JRW:md 11/9/95; 4/8/97