***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Gillen and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence. The Full Commission adopts the Opinion and Award of Deputy Commissioner Gillen with minor modifications.
 ***********
The following were entered into evidence at the hearing before the deputy commissioner as:
 EXHIBITS
a. The proposed Pretrial Agreement marked as defendants' exhibit 1.
b. The Industrial Commission Forms filed in this matter, collectively paginated 1-8 and marked as defendants' exhibit 2. *Page 2 
c. Plaintiff's personnel file, collectively paginated 1-133 and marked as defendants' exhibit 3.
d. Plaintiff's medical records, collectively paginated 1-22 and marked as defendants' exhibit 4.
e. A witness statement from Doris Forney and associated documents, collectively paginated 1-7 and marked as defendants' exhibit 5.
f. Defendant-carrier's notes from an interview of plaintiff taken 11 September 2007, collectively paginated 1-12 marked as defendants' exhibit 6.
 ***********
Subsequent to the hearing before the deputy commissioner additional medical records were entered into evidence. These are marked as defendants' exhibit 7 and are collectively paginated 1-42.
 *********** ISSUE PRESENTED
Did plaintiff sustain a compensable injury by accident arising out of and in the course of her employment with defendant on August 2, 2007 and, if so, to what benefits is she entitled?
 ***********
Based upon all the competent evidence from the record, the Full Commission finds as follows:
 FINDINGS OF FACT
1. On the relevant dates, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act. *Page 3 
2. On August 2, 2007, an employment relationship existed between plaintiff and defendant. Plaintiff worked as a dietary aide. Plaintiff began work for defendant in June 1997 and was 55 years old at the time of the hearing before the deputy commissioner.
3. On August 2, 2007, plaintiff was earning an average weekly wage of $343.45, which yields a workers' compensation rate of $228.98.
4. As of the date of the hearing before the deputy commissioner, plaintiff was working for defendant doing her regular job at full duty.
5. Plaintiff's duties as a dietary aide for defendant on August 2, 2007, required her to perform various food-related tasks, such as preparing food and drinks, placing the food and drinks on trays, and transporting the food and drinks on carts to the residents. Plaintiff was also required to do light cleaning. At least once per day, plaintiff performed the task of loading glasses of full drinks onto trays and placing the loaded trays on a cart. While performing this particular task, plaintiff routinely bent over or squatted in order to place the trays with glasses on the lower shelves of the cart.
6. In the months prior to August 2, 2007, plaintiff had suffered ongoing problems such as leg weakness related to her unusually heavy menstrual flow. Doris Forney, one of plaintiff's supervisors, testified at the hearing that plaintiff had reported to her on several occasions that plaintiff suffered weakness due to heavy bleeding during "that time of the month."
7. Plaintiff testified that she was experiencing unusually heavy menstrual flow on August 2, 2007. In addition, plaintiff testified that she was experiencing right leg pain on August 2, 2007 prior to going to work and that she almost did not report to work that day as a result. *Page 4 
8. Plaintiff's supervisor, Doris Forney, testified that plaintiff told her that she did not want to report for work on August 2, 2007 due to her right leg pain and that plaintiff's husband told plaintiff not to go to work that day because of this problem.
9. On August 2, 2007 plaintiff was loading glasses of iced tea onto trays and placing the loaded trays on a cart. As part of the normal routine, plaintiff had to squat to place the trays on the lower area of the cart. Plaintiff testified that this is a normal, regular part of the job duties she routinely completed as a dietary aide. Plaintiff specifically testified that she was the worker who normally completed this task in this way every day at 10:00 a.m.
10. While squatting to perform this task on August 2, 2007, plaintiff experienced weakness in her legs such that she was unable to lift herself from this squatting position. Plaintiff ended up sitting on her buttocks on the floor as a result of this event. The floor was not wet or otherwise unusually hazardous.
11. Plaintiff testified that she did not slip or trip. Plaintiff specifically testified that nothing out of the ordinary occurred except for the fact that her legs were weak during this incident. Plaintiff was unable to explain what happened during this incident or why she lost her balance.
12. Plaintiff immediately reported the incident to her direct supervisor, Doris Forney, who had witnessed the immediate aftermath.
13. Without seeking authorization plaintiff received medical treatment at Urgent Medical and Family Care in Greensboro on August 3, 2007. The medical record generated by this visit documents that plaintiff had "[right] knee swelling [for] 24 [hours]," that she "denies trauma or injury," that she reported "pain [with] squatting," and that her "knee gave out on her." *Page 5 
Significantly, the note also reads "has a gynecologist — menorrhagia." Menorrhagia is abnormally profuse menstrual flow.
14. Plaintiff testified that she missed only five or six days of work following the incident. These were excused absences and plaintiff was paid for the time she was out of work. Plaintiff returned to her regular job at full duty.
15. On September 4, 2007 plaintiff reported to defendant that she had hurt her knee during the August 2, 2007 incident. Defendant was aware of the incident but was previously unaware that plaintiff was alleging an injury as a result of the incident. Defendants undertook to investigate the incident once plaintiff reported an injury to her knee. Plaintiff was sent to Urgent and Family Medical Care. Several medical visits were authorized and provided by defendants before the claim was denied.
16. Plaintiff's claim was denied by defendants with an Industrial Commission Form 61 dated October 2, 2007.
17. The September 4, 2007 appointment note from Urgent and Family Medical Care states, "right leg swollen hip to ankle" with an onset listed as "2 days" prior. The September 5, 2007 note reports that "swelling is gradually improving." Plaintiff returned to Urgent and Family Medical Care for medical treatment on several other occasions. By September 22, 2007, plaintiff was noted to be "[p]ain-free now. Only rare intermittent pain." The note further documents "[n]o limping. No gait [alteration.]"
18. On March 17, 2008 plaintiff returned to Urgent Medical and Family Care. At this time she again reported right hip and right knee pain, with an onset 3 days prior. An MRI was completed on March 28, 2008. This MRI revealed several findings, including "horizontal tear suggested," "myxoid degeneration," and "possible loose body." *Page 6 
19. On April 10, 2008 plaintiff began receiving treatment from Dr. John L. Graves at Guilford Orthopaedic and Sports Medicine Center. The history documented by Dr. Graves shows "pain in her right knee which began about 1 ½ years ago, when she fell and twisted her right knee." Dr. Graves diagnosed plaintiff with patellofemoral arthritis to her right knee. Plaintiff underwent a cortisone injection performed by Dr. Graves.
20. Plaintiff attended two sessions of physical therapy at Southeastern Orthopaedic Specialists. The first was on April 18, 2008, the second on May 6, 2008. The note memorializing the May 6, 2008 session indicates that all goals were met, that plaintiff was pleased with her progress, and that plaintiff was to continue with a home exercise program.
21. Plaintiff saw Dr. Graves on May 20, 2008. In the note Dr. Graves remarked that plaintiff was doing fine and released plaintiff.
22. The task described by plaintiff as causing her pain on August 2, 2007 was not abnormal and, furthermore, was completed regularly as part of her normal job. She used her normal method of performing this task on August 2, 2007. Plaintiff described no interruption of the work routine and the introduction thereby of unusual conditions likely to result in unexpected consequences. Because plaintiff was performing her job in the usual and customary manner, and because there was no interruption of the normal work routine, she did not sustain an injury by accident arising out of her employment as defined in the North Carolina Workers' Compensation Act.
23. The greater weight of the evidence in this case indicates that plaintiff's weakness and inability to stand while performing the task in question on August 2, 2007 was caused by her idiopathic right leg soreness and/or her idiopathic menorrhagia. No evidence to the contrary was presented. *Page 7 
24. There is insufficient evidence of record from which to determine by its greater weight that plaintiff's employment with defendant caused her to develop any occupational disease related to her knee condition.
25. There is insufficient evidence of record from which to determine by its greater weight that plaintiff's employment with defendant placed her in a position of greater risk than the general public of contracting any occupational disease related to her knee condition.
26. Furthermore, there is insufficient evidence of record from which to determine by its greater weight that plaintiff suffered a diminution of her wage-earning capacity as the result of any August 2, 2007 incident.
 ***********
Based on the foregoing findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. In workers' compensation cases, plaintiff has the burden of proving every element of compensability. As part of this burden, plaintiff must present convincing evidence establishing these elements. N.C. Gen. Stat. § 97-2(6); Harvey v. Raleigh Police Department, 96 N.C. App. 28, 384. S.E.2d 549, disc. rev. denied, 325 N.C. 706, 388 S.E.2d 454(1989);Gaddy v. Kern, 17 N.C. App. 680, 683, 195 S.E.2d 141, 143, cert.denied 283 N.C. 585, 197 S.E.2d 873 (1973).
2. To be compensable, an injury by accident must involve more than the carrying on of the usual and customary duties in the usual way to justify an award of compensation. Davis v. Raleigh Rental Center,58 N.C. App. 113, 292 S.E.2d 763 (1982). In this case, plaintiff's injury occurred under normal working conditions and involved the carrying on of her usual and customary duties in the usual way. There was no description of an interruption of the work *Page 8 
routine and the introduction thereby of unusual conditions likely to result in unexpected consequences. Plaintiff therefore did not suffer a compensable injury by accident as defined by the Act. N.C. Gen. Stat. § 97-2(6); Pitillo v. N.C. Dep't of Envtl. Health and Natural Res.151 N.C. App. 641 (2002); Poe v. Acme Bldrs., 69 N.C. App. 147,316 S.E.2d 338, cert. denied, 311 N.C. 762, 321 S.E.2d 143
(1984); Davis v. RaleighRental Center, 58 N.C. App. 113, 292 S.E.2d 763 (1982).
3. The greater weight of the evidence in this case indicates that plaintiff's weakness and inability to stand while performing the task in question on August 2, 2007 was caused by her idiopathic right leg soreness and/or her idiopathic menorrhagia. The August 2, 2007 injury therefore did not arise out of her employment with defendant. Vause v.Vause Farm Equip. Co., 233 N.C. 88, 63 S.E.2d 173 (1951), Mills v. Cityof New Bern, 122 N.C. App. 283, 468 S.E.2d 587 (1996).
4. In order for an occupational disease to be compensable under N.C. Gen. Stat. § 97-53(13), a plaintiff must prove that the disease is characteristic of individuals engaged in the particular trade or occupation in which the plaintiff was engaged, that the disease is not an ordinary disease of life to which the public is equally exposed, and that there exists a causal relationship between the disease and the plaintiff's employment. N.C. Gen. Stat. § 97-53(13); Rutledge v. TultexCorp., 308 N.C. 85, 93, 301 S.E.2d 359, 365 (1983). Fann v.Burlington Indust., 59 N.C.App. 512, 296 S.E.2d 819 (1982); Booker v.Duke Medical Center, 297 N.C. 458, 256 S.E.2d 189 (1979).
5. In this case, plaintiff has not proven by the greater weight of the evidence that her employment with defendant caused her to contract any occupational disease related to her knee condition. N.C. Gen. Stat. § 97-53(13); Rutledge v. Tultex Corp., 308 N.C. 85, 93, *Page 9 301 S.E.2d 359, 365 (1983), Fann v. Burlington Indust., 59 N.C.App. 512,296 S.E.2d 819 (1982);Booker v. Duke Medical Center, 297 N.C. 458,256 S.E.2d 189 (1979).
6. Plaintiff has not proven by the greater weight of the evidence that her employment with defendant placed her at greater risk than the general public of contracting any occupational disease related to her knee condition. N.C. Gen. Stat. § 97-53(13); Rutledge v. TultexCorp., 308 N.C. 85, 93, 301 S.E.2d 359, 365 (1983), Booker v. DukeMedical Center, 297 N.C. 458, 256 S.E.2d 189 (1979).
7. Disability is defined an incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or other employment. N.C. Gen. Stat. § 97-2(9). The greater weight of the evidence in this case fails to establish that plaintiff suffered a diminution of her wage-earning capacity as the result of the August 2, 2007 incident. Id.; N.C. Gen. Stat. § 97-29; Russell v. Lowe's ProductDistribution, 108 N.C. App. 762, 425 S.E.2d 454 (1993); Hilliard v. ApexCabinet Co., 305 N.C. 593, 290 S.E. 2d 682 (1982).
8. Defendants' provision of medical treatment to plaintiff does not prevent defendants from later denying liability. Harrison v. LucentTechnologies 156 N.C. App. 147, 575 S.E.2d 825 (2003).
9. Given the foregoing, plaintiff's claim is not compensable under the provisions of the North Carolina Workers' Compensation Act. N.C. Gen. Stat. § 97-1, et seq.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. This claim is hereby DENIED. *Page 10 
2. Each side shall bear its own costs.
 This the 26th day of February, 2009. S/___________________ STACI MEYER COMMISSIONER CONCURRING: S/___________________ DIANNE C. SELLERS COMMISSIONER
 S/___________________ DANNY McDONALD COMMISSIONER