***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Gillen and the briefs and arguments before the Full Commission. The appealing parties have not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives. The Full Commission AFFIRMS with some modifications, the Opinion and Award of Deputy Commissioner Gillen.
 ***********
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as: *Page 2 
 STIPULATIONS
1. All parties are properly before the Industrial Commission. The Industrial Commission has jurisdiction of the parties and the subject matter.
2. All parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
3. All parties have been properly designated and there is no question as to misjoinder or nonjoinder of parties.
4. An employment relationship existed between the parties for all relevant time periods.
5. At the time of plaintiff's alleged injury by accident on or about June 12, 2008, Fred Anderson Toyota was and is self-insured for the purposes of meeting the requirements of the Workers' Compensation Act of the State of North Carolina, with Brentwood Services Administrators, Inc. serving as the policy administrator.
6. Plaintiff's pre-injury average weekly wage was $433.44, which yields a workers' compensation rate of $288.97.
 ***********
The following were entered into evidence as:
 STIPULATED EXHIBITS
1. Exhibit 1: Pre-Trial Agreement
2. Exhibit 2: large group of documents including the Industrial Commission forms filed in this matter, the accident report, plaintiff's employment records, plaintiff's medical records, all paginated collectively 1-189
3. Plaintiff's Exhibit 1: "Payroll/Status Change Forms" *Page 3 
4. Plaintiff's Exhibit 2: "Confidential Wage/Salary History" form
5. Defendant's Exhibit 1: discovery responses
6. Defendant's Exhibit 2: wage information documents
7. Defendant's Exhibit 3: verification of wages for William Touchberry
8. Defendant's Exhibit 4: documentation of employees laid off in January 2009 from Anderson Automotive Group
9. The issues before the Deputy Commissioner for determination were whether plaintiff sustained a compensable injury by accident on or about June 12, 2008, and, if so, to what benefits is plaintiff entitled under the Act. On appeal to the Full Commission the remaining issues concern whether plaintiff is entitled to certain medical treatment and ongoing indemnity compensation.
 ***********
Based upon all the competent evidence of record herein, the Full Commission makes the following:
 FINDINGS OF FACT
1. As of the date of the hearing before the Deputy Commissioner, plaintiff was 73 years old and has a significant medical history that includes coronary disease.
2. Plaintiff's prior vocational experience includes operating a photography studio for decades. Plaintiff subsequently worked as a shuttle driver at RDU airport. Plaintiff began employment with defendant-employer as a shuttle driver in January 2008.
3. On June 12, 2008 plaintiff was working as a shuttle driver for defendant-employer. On this date plaintiff drove defendant-employer's shuttle to pick up a customer in Cary, North Carolina. Upon arrival, the customer was not ready so plaintiff put down the *Page 4 
windows of the shuttle, turned off the engine, and waited for the customer. June 12, 2008 was a hot and humid day. Furthermore, the air quality was poor in the Cary area that day due to coastal fires and a tire fire in Kenly, North Carolina.
4. Once the customer was ready and got into the shuttle, plaintiff began driving back to defendant-employer. While on I-40 near Airport Boulevard, as plaintiff drove the customer back to the dealership, plaintiff told his customer that he was feeling as though he was going to faint. Plaintiff signaled to pull off to the shoulder of I-40 but lost consciousness before he could complete this maneuver. The shuttle ran off I-40, struck a guardrail, bounced back into traffic, was struck by another vehicle, and came to rest in the median.
5. Plaintiff was unconscious for several minutes. Plaintiff was transported to WakeMed. At WakeMed plaintiff received treatment for neck pain, multiple facial lacerations, a cerebral contusion, and broken teeth. Regarding the cause of plaintiff's motor vehicle accident, a June 13, 2008 medical note from Dr. J. Mark Englehardt reads: "Syncope, while driving which was witnessed and noted to have a prodome of nausea and weakness which is almost certain vasovagal in etiology, particularly in a patient who has had this condition diagnosed before." A "syncope" is a temporary loss of consciousness due to cerebral anemia.
6. While at WakeMed plaintiff also underwent nasal surgery and a CT scan of his cervical spine. The radiology report generated following the CT scan read, in part: "Possible hyperextension related widening of the C6-7 disc interspace, possible disruption of the anterior longitudinal ligament at [C6-7]. Would recommend at least flexion and extension views, MRI would also be helpful. . . ." These recommended tests were apparently never performed. Plaintiff was discharged from WakeMed on June 15, 2008. *Page 5 
7. Defendant refused to pay for certain diagnostic studies done while plaintiff was at WakeMed. Extensive drug screening was done for legal reasons concerning insurance issues involved in the motor vehicle accident. Dr. David Millward testified, and the Full Commission finds, that the testing and lab work done at WakeMed were standard and appropriate for a patient admitted after a motor vehicle accident.
8. On June 20, 2008 plaintiff was examined by Dr. Dirk Vice, D.D.S. As a result of the June 12, 2008 motor vehicle collision, plaintiff sustained dental injuries caused by significant blunt trauma to the face. Plaintiff was missing chips off the porcelain on teeth numbered 9 and 10 of his anterior bridge. The ideal treatment for plaintiff would have been to replace the entire bridge; however, plaintiff was very concerned about finances so Dr. Vice performed a compromise treatment and merely patched up the damaged area.
9. Plaintiff was seen by cardiologist Dr. David Millward for examination on June 25, 2008. Dr. Millward's medical note from this date noted that plaintiff was "extremely disabled today with marked muscle spasm." Dr. Millward further noted that plaintiff "cannot raise his head and probably has significant muscle injury to the neck and shoulder."
10. Plaintiff remained out of work until August 9, 2008, on which date he returned to work for defendant-employer. Plaintiff was under no work restrictions. Defendant-employer was unable to return plaintiff to his shuttle-driving job due to insurance issues because plaintiff had three accidents while employed by defendant-employer.
11. Upon his return to work for defendant-employer, plaintiff was put into a new position as a "greeter," a job which was created for plaintiff. Plaintiff worked full time for approximately two months and then at reduced hours through January 6, 2009 when his position was eliminated as part of a large layoff due to the economic downturn. *Page 6 
12. Dr. Millward testified at his deposition that the neck and muscle symptoms experienced by plaintiff subsequent to June 12, 2008 were caused by the motor vehicle collision. Dr. Millward also testified that plaintiff likely suffered a vasovagal reaction on June 12, 2008 that led to his loss of consciousness. A vasovagal reaction is usually associated with a drop in heart rate and blood pressure.
13. At his deposition Dr. Vice stated that the treatment given to repair plaintiff's teeth following the June 12, 2008 dental damage was not an ideal treatment, but was due to plaintiff's monetary situation, and that plaintiff was likely to need additional treatment to his bridge. Dr. Vice specifically testified: "In [plaintiff's] particular situation, as my patient, I would definitely take very — pay very close attention to that area. I'd almost be expecting it, waiting for it to happen. That's why . . . I initially suggested an entirely new bridge."
14. Chiropractor Dr. Thomas Ayers causally related plaintiff's upper back and neck injuries to the June 12, 2008 motor vehicle collision.
15. Plaintiff's injuries sustained as a result of his motor vehicle accident of June 12, 2008 arose out of and occurred in the course of his employment with defendant-employer. In that plaintiff was driving a shuttle for defendant-employer at the time he lost consciousness, special hazards attributable to, or incidental to, plaintiff's employment existed and were a contributing proximate cause of plaintiff's accident and resulting injuries. Therefore, plaintiff's injury arose out of plaintiff's employment, even though an idiopathic condition may have contributed to the accident and resulting injury.
16. The circumstances of plaintiff's injury on June 12, 2008 constituted an interruption of plaintiff's regular work routine and the introduction thereby of unusual conditions likely to result in unexpected consequences. Accordingly, on June 12, 2008 plaintiff sustained *Page 7 
an injury by accident arising out of and in the course of his employment with defendant-employer.
17. There is insufficient evidence to show that plaintiff was under any work restrictions subsequent to his return to work with defendant-employer. Plaintiff testified that he was never under any work restrictions. There is no mention of work restrictions related to the June 12, 2008 incident in plaintiff's medical records. Dr. Ayers stated that plaintiff's pain, radicular symptoms, and lack of range of motion would not preclude plaintiff from performing a shuttle driver position. Plaintiff testified that he drove to the hearing before the Deputy Commissioner.
18. Based upon the credible medical and vocational evidence of record, and as the result of plaintiff's June 12, 2008 injuries, plaintiff was unable to earn any wages in any employment from June 13, 2008 through August 8, 2008. After plaintiff was laid off on January 6, 2009, he looked for work at one employer. Plaintiff was capable of some work but failed to make reasonable efforts to find employment.
19. Plaintiff's employment with defendant-employer subsequent to his return to work was moved from full-time to part-time and eventually terminated due to the economic downturn. A non-injured person in plaintiff's position would have been treated identically given the same circumstances. Plaintiff was terminated in concert with a large number of contemporary layoffs and salary reductions.
20. Plaintiff's average weekly wage of $433.44 yields a weekly workers' compensation rate of $288.97. *Page 8 
21. The medical and dental treatment provided thus far has been reasonably necessary to effect a cure or give relief from plaintiff's various injuries and conditions resulting from the June 12, 2008 motor vehicle accident. Plaintiff requires continuing medical treatment.
23. Defendant did not defend this action without reasonable grounds.
24. This matter was appealed in part to the Full Commission by defendant from an Opinion and Award awarding benefits and results in an affirmation of that award.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. In Billings v. General Parts,187 N.C. App. 580, 654 S.E.2d 254 (2007), disc. reviewdenied, 362 N.C. 233, 659 S.E.2d 435 (2008), the Court of Appeals considered a case with facts highly analogous to the ones at bar. Plaintiff experienced a syncopal episode and resultant motor vehicle collision as he drove a company vehicle while working. TheBillings court cited and quoted numerous North Carolina cases in holding that when an idiopathic condition in the form of a syncopal episode combines with the hazards of employment while driving a motor vehicle, a resulting accident is compensable under the Act. Id.; Vause v. Vause Farm Equip. Co.,233 N.C. 88, 63 S.E.2d 173 (1951); Mills v. City of New Bern,122 N.C. App. 283, 468 S.E.2d 587 (1996); Hollar v. MontclairFurniture Co., 48 N.C. App. 489, 496, 269 S.E.2d 667 (1980).
2. On June 12, 2008, plaintiff sustained a compensable injury by accident arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6); Billings v. GeneralParts, supra. *Page 9 
3. Plaintiff has the burden of proving continuing disability and in order to meet the burden of proving disability, plaintiff must prove that he was incapable of earning pre-injury wages in either the same or in any other employment and that the incapacity to earn pre-injury wages was caused by plaintiff's injury. Hilliard v.Apex Cabinet Co., 305 N.C. 593, 290 S.E.2d 682 (1982). An employee may meet the initial burden of production by producing one of the following: (1) medical evidence that he is physically or mentally, as a result of the work-related injury, incapable of work in any employment; (2) evidence that he is capable of some work, but that he has, after a reasonable effort, been unsuccessful in his efforts to obtain employment; (3) evidence that he is capable of some work, but that it would be futile because of preexisting conditions, such as age, inexperience, or lack of education, to seek employment; or (4) evidence that he has obtained other employment at wages less than his pre-injury wages. Demery v.Perdue Farms, Inc., 143 N.C. App. 259, 545 S.E.2d 485 (2001);Russell v. Lowes Product Distribution,108 N.C. App. 762, 425 S.E.2d 454 (1993).
4. In this case plaintiff met the initial burden of proving by medical evidence that he was unable to earn wages in any employment from June 13, 2008 through August 8, 2008, when he returned to work for defendant-emploeyr. After plaintiff was laid off on January 6, 2009, plaintiff was capable of some work but failed to make reasonable efforts to find employment and there is no evidence that such efforts would be futile. Russell v. Lowes ProductDistribution, supra.
5. As the result of plaintiff's compensable accident of June 12, 2008, plaintiff was temporarily totally disabled from any employment and is entitled to temporary total disability compensation at the rate of $288.97 per week for the period beginning June 13, 2008 through August 8, 2008. N.C. Gen. Stat. § 97-29. *Page 10 
6. Subject to the provisions of N.C. Gen. Stat. § 97-25.1, plaintiff is entitled to have defendant provide all medical treatment incurred, or to be incurred, necessitated by the compensable June 12, 2008 accident. N.C. Gen. Stat. § 97-25. This treatment includes, but is not limited to, all emergency room testing and treatment, along with past and future dental treatment related to the compensable June 12, 2008 accident. N.C. Gen. Stat. §§ 97-25; 97-25.1.
7. Defendant did not defend this matter in an unreasonable manner or without reasonable grounds and, therefore, plaintiff is not entitled to attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1. Sparks v. Mountain BreezeRestaurant, 55 N.C. App. 663, 286 S.E.2d 575 (1982).
8. Plaintiff is entitled to payment by defendant for the attorney's fees associated with defendant's portion of the appeal to the Full Commission pursuant to N.C. Gen Stat. § 97-88.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to the attorney's fee approved below, defendant shall pay plaintiff temporary total disability compensation at the rate of $288.97 per week for the period from June 13, 2008 through August 8, 2008. Those payments that have accrued shall be paid to plaintiff in a lump sum.
2. Subject to the provisions of N.C. Gen. Stat. § 97-25.1, defendant shall pay for all medical treatment incurred, or to be incurred, as a result of plaintiff's compensable injury by accident. This treatment includes, but is not limited to, all emergency room testing and *Page 11 
treatment, along with past and future dental treatment related to the June 12, 2008 compensable injury by accident.
3. A reasonable attorney's fee of 25% of the compensation due plaintiff under paragraph 1 of this Award is approved for plaintiff's counsel and shall be deducted from the lump sum due plaintiff and paid directly to plaintiff's counsel.
4. Plaintiff's counsel shall submit an affidavit or itemized statement in support of an award of reasonable attorney's fees pursuant to N.C. Gen. Stat. § 97-88 within 10 days of the filing of this Opinion and Award for the time expended preparing and litigating defendant's portion of this appeal. Upon receipt of the affidavit, the Full Commission shall issue an order directing defendant to pay an additional attorney's fee directly to plaintiff's counsel.
5. Defendant shall pay the costs.
This 14th day of May 2010.
 S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER *Page 1